THIRZA ROY, APPELLEE, v. N. B. McPHERSON, AND FOSTER & TOWSLEE, APPELLANTS.

**Equity:** SECRET TRUST: CREDITORS OF TRUSTEE.   In March, 1864, the plaintiff, Mrs. Roy, by her brother, purchased the land in controversy, with her own money, derived from the estate of her deceased father.   The title, contrary to her directions, was taken to her husband, George Roy, instead of herself, which fact she learned immediately upon the delivery of the deed, which was duly recorded.   So far as shown, she made no objection, but permitted him to retain the title until August, 1877, when he conveyed it to a third person, with a view of having him convey it to her, which he did in March, 1878.   During the time George Roy so held the title he engaged in mercantile ventures, obtaining credit and contracting debts on the faith of his being the absolute owner of the land.   These debts were put in judgment, which were liens on the land when George Roy parted with the legal title.   Afterwards executions were issued and levied on the land, which was about to be sold by the sheriff, when this action was brought to enjoin the sale.   *Held,* that, as between Mrs. Roy and these creditors, their equity must be preferred, and the injunction denied.

APPEAL from the district court for Richardson county. Tried below before WEAVER, J.

*George P. Uhl*, for appellants, cited Story's Eq. Jur., secs. 384 to 392, 1536. 1 Greenl. Ev., 207. Tyler on Inf. & Cov., 448. *Russell v. Long*, 3 N. W. R., 75. *Hatch v. Gray*, 21 Ia., 29. *Schweizer v. Tracy*, 76 Ill., 350. *Young v. Hibbs*, 5 Neb., 433. *Bank v. Shaffer*, 9 Neb. 1.

*E. W. Thomas*, for appellee, contended that plaintiff's possession was notice of her rights, and that she occupied the land as a homestead. Cited on question of estoppel *McAfferty v. Conover*, 7 Ohio St., 105. *Moore v. Reavies*, 15 Kans., 150. *Johnston v. Turner*, 29 Ark., 280. Thompson on Homesteads, sec. 408.

LAKE, J.

The debts on which the several judgments in favor of the appellants, McPherson and Foster & Towslee, were rendered, were contracted by George Roy, the husband of the plaintiff, while he was the ostensible owner of the land in controversy, the legal title being in him in fact, and as shown by the record of deeds of the proper county. And there the title still was until after those parties had obtained their judgments, and the same had become liens thereon.

The finding of the district court on the pleadings and evidence was, *first*, generally for the plaintiff, which was followed by a special finding on a single point in these words, viz.: "That the defendants, Foster & Towslee, gave the credit to George Roy solely upon the representation of said Roy that he owned the land; and that the record showed the title to be in said George Roy." We find that this special finding is fully supported by the evidence, which shows, with-

out contradiction, that before giving the credit to Roy they took the precaution to search the records of deeds of Richardson county, and found the legal title to be in him, where it had rested for nearly eight years. And this fact was the inducement for giving the credit, which, without it, would have been withheld. The evidence also shows that Roy is insolvent and unable to pay his debts. These facts are placed beyond controversy.

As to the claim of the defendant, McPherson, there was no special finding, but an examination of the evidence convinces us that a large portion, if not the whole of it, was for supplies furnished for the use of Roy's family, and while the title to the land was in him. Therefore, on general principles, it seems but equitable that, as against the claim of Mrs. Roy, he should be permitted to look to the land for payment.

But what are the equities of Mrs. Roy, as shown by the record, in respect to this land? At the time of its purchase the land was, doubtless, paid for with money obtained by her from the estate of her deceased father; and the intention may have been, as she says it was, to take the title to herself, instead of having it conveyed to her husband. However, her full knowledge, immediately upon the delivery of the deed, that he was the grantee, together with the fact that she let the title remain in him during so many years, is pretty strong evidence to the contrary. Whatever her intention in this matter may have been, her acquiescence in what was done for so many years, whereby George Roy was given a credit among business men which otherwise he would not have had, and was enabled to contract these debts, must be held to estop her now from asserting her equity as against that of creditors who, in consequence of her acquiescence and silence, have been misled, and thus induced to part with their property.

Under the head of "Constructive Fraud," Story, in his Equity Jurisprudence, says: "Another class of constructive frauds of a large extent, and over which courts of equity exercise an exclusive and very salutary jurisdiction, consists of those where a man designedly or knowingly produces a false impression upon another, who is thereby drawn into some act or contract injurious to his own rights or interests." And further: "That if a party by the willful suggestion of a falsehood, is the cause of prejudice to another, who has a right to a full and correct representation of the fact, his claim ought in conscience to be postponed to that of the person whose confidence was induced by his representation. And there can be no real difference between an express representation and one that is naturally or necessarily implied from the circumstances. The wholesome maxim of the law upon this subject is, that a party who enables another to commit a fraud, is answerable for the consequences."

If we concede all that the plaintiff claims respecting the purchase and payment for this land, and consider her laches in leaving the title in her husband for so many years, and under such circumstances as are here proved, it is impossible under the rule just stated to hold that her equities are equal to those of the defendants. Whether she intended it or not, the legal title was placed in George Roy, and she knew it. So far as the public was advised, she laid no claim whatever to it other than as his wife. She stood by and saw him engage in business ventures, and knew, or rather, was bound to know, that his apparent ownership of the land assisted in giving him credit on which debts would very likely be contracted. And debts were in fact contracted on the strength of such ownership. After all this, it would be the extreme of injustice to say that her secret equity is superior to the lien acquired by

these defendants. "It is the dictate of natural justice that he who, having a right or interest, by his conduct influences another to act on the faith of its non-existence, or that it will not be asserted, shall not be allowed to afterwards maintain it to his prejudice." *McGovern v. Knox*, 21 Ohio St., 547.

We are of the opinion that the equities of the case are with the defendants. Wherefore the decree of the district court must be reversed, the injunction dissolved, and the case dismissed at the costs of plaintiff.

JUDGMENT ACCORDINGLY.