Filed June 27, 1884.

***

No. 10,095.

## SECOND NATIONAL BANK OF LAFAYETTE ET AL. *v.* BRADY ET AL.

FRAUDULENT CONVEYANCE.—*Agreement of Vendee to Reconvey.*—A conveyance back to the grantor of property conveyed to defraud creditors, pursuant to an agreement made at the time, is not fraudulent or illegal.

Second National Bank of Lafayette *et al. v.* Brady *et al.*

SAME.—*Consideration.*—*Promissory Notes.*—*Promise to Reconvey.*—Where a grantee in a deed executed to defraud creditors reconveys the property solely in consideration of the verbal promise made at the time of the first conveyance, and non-commercial promissory notes are executed at the time of the reconveyance to give color to the transaction, there is no consideration for such notes.

SAME.—*Legality of Consideration.*—*Cases Criticised.*—Notes executed at the time a reconveyance of the land is made by the grantee to the fraudulent grantor, pursuant to the verbal agreement made during the original transaction, are not' tainted by the illegality of that transaction. The cases of *Springer* v. *Drosch,* 32 Ind. 486, *Van Wy* v. *Clark,* 50 Ind. 259, and *O'Neil* v. *Chandler,* 42 Ind. 471, criticised.

PROMISSORY NOTE.—*Assignee of Note not Payable in Bank.*—The assignee of a promissory note not payable in bank takes it subject to defences existing before notice of assignment.

From the Superior Court of Tippecanoe County.

*R. Jones, F. B. Everett* and *J. M. LaRue,* for appellants.

*J. R. Coffroth, T. A. Stuart, A. L. Kumler, G. O. Behm, A. O. Behm* and *J. A. Stein,* for appellees.

ELLIOTT, C. J.—The appellee brought this suit to secure a decree for the cancellation of several notes and a mortgage executed by him. The facts were found by the court and conclusions of law stated. A motion for a new trial was overruled, and we think that the question whether this ruling was right depends entirely upon whether the theory of the law adopted by the court was or was not correct, for there is evidence supporting the finding of facts. The controlling questions in the case are presented by the special finding, and to that we turn. The finding is, substantially, as follows:

"That on the said 18th day of March, 1862, the said plaintiff was (and for several years previous thereto had been) indebted to the Lafayette Branch of the Bank of the State of Indiana in the sum of $3,437.09, upon a promissory note executed by him to said bank; that at and during said time the said bank was demanding payment of said debt and threatening to collect the same by process of law; that at the date aforesaid the plaintiff was indebted to the defendant Tinkler in the sum of $701.25, for which amount the said Tinkler

held the note of B. and J. D. Brady, and the plaintiff also owed said Tinkler several hundred dollars on account; that at the time aforesaid, said plaintiff was also indebted on account of the following mortgage liens upon said real estate so held by him as aforesaid, to wit: Eleanor Wheeler, $1,000; Philip Ensminger, $1,250; Coombs, $1,365; Resor, $1,080; school fund, $400; that on said 18th day of March, 1862, the said plaintiff, being unable to pay his said indebtedness to said bank, and having reason to apprehend that said bank would enforce the collection of its debt by process of law, proposed to the defendant Tinkler that the said Tinkler should accept from him a conveyance of his said real estate and hold the title to the same until the plaintiff could be relieved in some way from his financial embarrassment; that said proposition was made by said plaintiff for the purpose of hindering, delaying and defrauding his creditors, and especially for the purpose of hindering, delaying and defrauding the bank in the collection of its said debt; that said Tinkler understood the purpose for which said proposition of Brady was made, and, understanding it, agreed to it, with the understanding that he was to hold the title to said lands until the plaintiff could make a settlement with said bank; that thereupon, to wit, on said 18th day of March, 1862, the said plaintiff, without consideration, and for the special purpose of delaying and defrauding the said bank in the collection of its said debt, voluntarily conveyed said lands to said Tinkler; that at the time of the execution of said conveyance from the plaintiff to said Tinkler, he, the said Tinkler, executed his eight promissory notes in favor of the plaintiff for the sum of $750 each, payable respectively, on the 1st day of October, in the years 1863, 1864, 1865, 1866, 1867, 1868, 1869 and 1870, and contemporaneously with the execution of said notes the plaintiff executed a written agreement whereby it was stipulated that said Tinkler should not be required to pay either of said notes until the plaintiff should discharge all and singular the then existing liens upon said lands, and that in the event of said

Tinkler paying any of said liens, such payment should be a credit upon said notes; that none of said eight notes were ever delivered to the plaintiff, but all of them were subsequently destroyed by said Tinkler; that prior to the 14th day of August, 1875, the liens hereinbefore set out were paid and discharged by the plaintiff, except the Coombs lien, which remains unpaid; and I find that the said eight notes executed by Tinkler in favor of the plaintiff were given without consideration; that in the year 1867 the plaintiff and his said co-tenant, Jefferson D. Brady, made an amicable partition of said lands so held in common by them, and set apart to each other the respective portions thereof hereinafter referred to; that afterwards, to wit, on the 13th day of October, 1873, in confirmation of said amicable partition, the said Jefferson D. Brady executed a deed conveying to said Tinkler the portions of said lands so held in common; that said Tinkler conveyed the remaining portion of said lands so held in common to said Jefferson D. Brady; that from thence until the 14th day of August, 1875, said Tinkler held the title to said lands in severalty and pursuant to the said proposition made to him on the 18th day of March, 1862; that afterwards, to wit, on the 14th day of August, 1875, the plaintiff having settled his indebtedness to said bank by compromise, by paying said bank in full satisfaction of its claim the sum of $2,000, requested said Tinkler to reconvey said lands to him, and thereupon said Tinkler, in compliance with said request, voluntarily conveyed to the plaintiff said lands so conveyed to him in severalty by the plaintiff, and also said lands conveyed to him by said Jefferson D. Brady.

"At the time and date of said last named conveyance from Tinkler to the plaintiff, to wit, on the 14th day of August, 1875, the plaintiff executed to said Tinkler the notes and mortgage which are described in the complaint and cross complaint. But said notes and mortgage were executed by the plaintiff, and delivered to said Tinkler, upon an understanding between them that they were so executed and delivered

for the purpose of maintaining an appearance of good faith in the transaction of March 18th, 1862, and upon the further understanding that Tinkler should deliver them to the plaintiff in a short time. I find that said notes and mortgage sued on were executed by the plaintiff without consideration, and that said notes are not payable in any bank in this State.

"I further find that on the 23d day of March, 1876, the defendant Tinkler, and his brother, Joseph Tinkler, were indebted to the said defendant and cross complainant, the Second National Bank of Lafayette, in a sum exceeding the amount of the notes in suit, partly due and partly to become due shortly thereafter; that on said last day, in partial satisfaction of the indebtedness of himself and his said brother Joseph to said Second National Bank, viz., in satisfaction of so much of said indebtedness as the notes in suit would cover, the defendant Consider Tinkler assigned said mortgage and endorsed said notes in suit to said Second National Bank, neither of said notes or instalments of interest being then due, and said assignment of said notes and mortgage, and other payments made by said defendant Tinkler, were accepted by said Second National Bank in settlement of said indebtedness of said Consider Tinkler and his brother Joseph.

"I further find that at the date of said assignment of said notes and mortgage said Joseph Tinkler was insolvent.

"I further find that at the date of the execution of said notes and mortgage the plaintiff was unmarried, and that he has since intermarried with said defendant Lena L. Brady, one of the defendants to said cross complaint.

"I further find that from the 18th day of March, 1862, until the 14th day of August, 1875, the said plaintiff was in the peaceable and uninterrupted possession of said lands, and received the issues and profits of the same with the knowledge of the defendant Tinkler.

"I further find that in October, 1862, the said Lafayette Branch of the Bank of the State of Indiana recovered a judgment against the plaintiff in the Tippecanoe Circuit Court, on

account of said indebtedness of said plaintiff to it, in the sum of $3,546.34, and that said Lafayette Branch of the Bank of the State ceased to exist in the year 1865.

"I further find that the amount of principal and interest upon the first three of said notes, after deducting payments, is $4,356.43; that on the 14th day of August, 1881, the amount of principal and interest of said fourth note, after deducting payments, will be $1,450; that on the 14th day of August, 1882, the amount of principal and interest, after deducting payments on said fifth note, will be $1,550; that on the 14th day of August, 1883, the amount of principal and interest, after deducting payments on said sixth note, will be $1,650; that on the 14th day of August, 1884, the amount of principal and interest on said seventh note, after deducting payments, will be $2,768.33.

"I further find that in the said deed of conveyance from said defendant Tinkler to said plaintiff, and in the said mortgage from said plaintiff to said Tinkler, there is a misdescription of one of said tracts of land as stated in said cross complaint.

"I further find that no evidence has been given upon the allegations in said cross complaint as to the lien in favor of said Byron W. Langdon."

Upon the facts, conclusions of law were stated in the following language:

"I find in favor of the plaintiff, Benjamin Brady, and against said defendants, the Second National Bank of Lafayette and Consider Tinkler, and that said plaintiff is entitled to have said notes and mortgage, described in his complaint, cancelled.

"As a further conclusion of law upon the facts so found as aforesaid, I find upon the cross complaint of said cross complainant, the Second National Bank of Lafayette, in favor of the defendants Benjamin Brady, Lena L. Brady and Byron W. Langdon.

"As a further conclusion of law upon the facts so found as aforesaid, I find in favor of the cross complainant, the Sec-

ond National Bank of Lafayette, against said defendant Con-
sider Tinkler, upon the said cross complaint of said bank,
that there is now due to said cross complainant from said
Consider Tinkler, on account of the assignment of said mort-
gage and endorsement of said notes by said Consider Tink-
ler to said 'Second National Bank of Lafayette, the sum of
$4,356.43 ; that there will become due on like account from
said Tinkler, to said bank, on the 14th day of August, 1882,
the further sum of $1,550 ; that there will become due on
like account from said Tinkler to said bank, on the 14th day
of August, 1883, the further sum of $1,650 ; and that there
will become due on like account from said Tinkler to said
bank, on the 14th day of August, 1884, the further sum of
$2,768.83."

The general rule undoubtedly is that between the parties
a fraudulent conveyance of land made with intent to defraud
creditors is valid, and that such a conveyance can be annulled
only at the suit of a creditor.   But in the present instance
the notes and mortgage were not executed as part of the orig-
inal transaction, but were executed a long time afterwards,
and in performance of an agreement made at the time the
original conveyance was executed.   The case assumes quite
a different form from that which it would wear, if the notes
and mortgage formed part of the original transaction.

The conveyance made by Tinkler to Brady, in 1875, was
made something more than thirteen years after the fraudu-
lent conveyance of the land, and was executed pursuant to
the agreement made at the time of the execution of the orig-
inal conveyance, that Tinkler should reconvey the land to
Brady.   The conveyance made in 1875 was in execution of
the former agreement, and not in consideration of the notes
and mortgage in suit.   The notes and mortgage did not in-
duce the conveyance ; that was induced by the promise made
thirteen years before.   The consideration of the notes and
mortgage was not, as the court finds, the conveyance of the
land, so that they can not be held to rest upon that consid-

eration. Assuming, then, that the conveyance was made in execution of the prior agreement and not in consideration of the execution of the notes and mortgage, our search must be for some other consideration. The question to which we come is, was there any other consideration, and if so, what was it?

Tinkler voluntarily reconveyed to Brady in accordance with the agreement made in 1862, and there is, therefore, no necessity for examining or deciding whether Brady could have compelled Tinkler to carry into effect that agreement. It was voluntarily carried into effect, and that ends all question as to whether it could or not have been enforced. We are not required to decide whether the notes and mortgage would have been supported by a consideration, if Tinkler had demanded them as compensation for conveying the land back to Brady, for no such demand was made and the conveyance was for the single purpose of making good the agreement made thirteen years before.

Whatever may have been the rights vested in Tinkler by the conveyance of 1862 they were divested by the conveyance executed to Brady in 1875. This conveyance stripped Tinkler of all interest in the land and of all rights growing out of the original transaction. All claims upon Brady, growing out of that transaction, were extinguished by the voluntary conveyance executed in 1875, re-vesting the land in Brady in accordance with the previous agreement. In *Fargo* v. *Ladd*, 6 Wis. 106, the question here in hand received consideration, and it was held that where the grantee of property fraudulently conveyed had voluntarily reconveyed to the grantor, in apparent execution of his trust, he can not afterwards make a valid claim to the property, or its proceeds, on the ground of the original fraudulent conveyance.

The validity of the original agreement to reconvey is not a material question, and we need not enquire whether it was or was not void under the statute of frauds, or whether it was or was not void because fraudulent, for, to borrow the language of the case cited, " the complainant, by his own act, di-

vested himself of a title which he had received in fraud of law; and equity does not seem called to re-invest him." And we add that by this divestiture he extinguished all claims arising out of the original transaction.

·There are no facts found from which a consideration of the notes and mortgage can be inferred, and the inference of the court that the notes and mortgage were without consideration is fully warranted. The conclusion is an inferential fact deduced from the evidentiary facts.

The purpose of Brady in executing the notes and mortgage in suit was not a fraudulent one, for the claim of the Bank of the State had been adjusted long before, and all rights of the bank to enforce it had been lost. The purpose of the transaction of 1862 was to hinder and delay creditors, but this was not, as we understand the facts, the purpose of the transaction of 1875. The purpose of Brady was to get back his land, and that of Tinkler was to perform the agreement made by him in 1862. There was not any intention to defraud creditors when the last transaction occurred. There were, indeed, no creditors of the appellee Brady who could be injured by the transaction, so that the question is not embarrassed by any consideration of that character.

There is an important difference between setting aside a conveyance made to defraud creditors at the suit of the fraudulent grantor, and the enforcement of notes or mortgages executed in the course of the fraudulent transaction. The cases of *Garner* v. *Graves*, 54 Ind. 188, *Edwards* v. *Haverstick*, 53 Ind. 348, and *Laney* v. *Laney*, 2 Ind. 196, decide that a fraudulent conveyance can not be avoided by the grantor. *Van Wy* v. *Clark*, 50 Ind. 259, and *O'Neil* v. *Chandler*, 42 Ind. 371, following, without investigation, the case of *Springer* v. *Drosch*, 32 Ind. 486 (2 Am. R. 356), decide that notes and mortgages executed by the fraudulent grantor to his fraudulent vendee may be enforced, while *Welby* v. *Armstrong*, 21 Ind. 489, decides the question exactly the other way. It seems that *Springer* v. *Drosch*, *supra*, is opposed to the familiar rule that courts

will not aid either party to enforce a contract founded in fraud, but will leave them where it found them, and it certainly is in conflict with the great weight of authority. *Nellis* v. *Clark*, 4 Hill, 424; *Moseley* v. *Moseley*, 15 N. Y. 334; *Mason* v. *Baker*, 1 Marsh. 208; *Norris* v. *Norris*, 9 Dana, 317; *Randall* v. *Howard*, 2 Black, 585; *Fox* v. *Gardner*, 21 Wall. 475; *Hamilton* v. *Scull*, 25 Mo. 165; *McCausland* v. *Ralston*, 12 Nev. 195; *Miller* v. *Marckle*, 21 Ill. 152; *Heineman* v. *Newman*, 55 Ga. 262; S. C., 21 Am. R. 279; *McQuade* v. *Rosecrans*, 36 Ohio St. 442; *Wearse* v. *Peirce*, 24 Pick. 140. We are not, however, required to pass upon the question as presented in *Springer* v. *Drosch, supra*, because the notes and mortgage, here the subject of investigation, did not form part of the original fraudulent transaction, but were long afterward executed, and executed concurrently with a voluntary reconveyance of the land in compliance with the terms of an antecedent promise.

It is true, as appellants' counsel argue, that Tinkler might have held the land, or might have insisted upon payment of its value before reconveying, but this he did not choose to do; on the contrary he voluntarily reconveyed as he had originally agreed to do, and did not exact payment or promise of payment. The case is to be decided upon what was actually done, not upon what might have been done.

We think it clear that, as between Tinkler and Brady, there was no consideration for the notes and mortgage, and the question is whether the fact that the Second National Bank received them for an antecedent debt due to it from Tinkler changes the rule. The notes were not payable in bank, and therefore not governed by the law merchant. As they were not protected as commercial instruments, they would be subject to the defence of want of consideration in the hands of the assignee unless the maker has done some act which estops him from making that defence.

The special finding does not directly show that the bank released Consider Tinkler and his brother Joseph from their

indebtedness; for aught that appears they remained bound. If the finding showed a surrender of the evidences of indebtedness or a change of position, then, doubtless, the bank would be protected as a *bona fide* holder so far as there can be a *bona fide* holder of such notes as these. *Boling.* v. *Howell,* 93 Ind. 329 ; *Gilchrist* v. *Gough,* 63 Ind. 576 ; *Mayer* v. *Grottendick,* 68 Ind. 1.

Where a non-commercial note is shown to have been given without consideration, and the assignee claims a right to enforce it, upon the ground of estoppel, the burden of showing the facts constituting the estoppel rests on the assignee. *Harbison* v. *Bank,* 28 Ind. 133 ; *Zook* v. *Simonson,* 72 Ind. 83 ; *Small* v. *Clewley,* 62 Maine, 155 (16 Am. R. 410) ; 1 Dan. Neg. Ins., sec. 166.

Where a party has the burden, and the special finding is silent as to a fact essential to his defence or cause of action,. it will be deemed against him as to that fact.  An essential element in an estoppel is, that the person relying upon it was induced to change position by the acts of the party against whom the estoppel is urged, and here there was, according to the special finding, no change of position.

We will, however, treat the case as though there was a release of the two debtors, Consider and Joseph Tinkler, for the reason that the evidence tends to show that fact.   Under this view of the case the appellants must fail, for the appellee Benjamin Brady had done no act estopping himself. We think it clear that the mere execution of a non-commercial note does not estop the maker from pleading want of consideration, and nothing more was done by Brady.   We need not inquire what the rule would be if the maker were relying upon his own fraudulent act to escape payment, for here, to repeat what it has been necessary to say many times, the notes were not executed for a fraudulent purpose, because it appears that the debt of the creditor had been paid, and the creditor itself, the Bank of the State, had ceased to exist ten years before the notes were executed.

Notes such as those here under discussion are taken by an assignee at his own risk, knowing that, by positive law, they are subject to defences existing in favor of the maker before notice of assignment. Our statute positively declares this rule of law, and the parties must take notice of it. The party who executes a note not payable in bank can not be held to estop himself from making a defence, for the law expressly vests in him that right. In view of our statute, it would seem clear that one who takes a note not payable in bank is, in a qualified degree, put upon inquiry, and if he fails to ascertain whether there are any defences he must abide the consequences. Of course, if the defence is one forbidden by law, or is one the maker of the note is estopped to assert, then the assignee's right to enforce the note becomes perfect.

In the case of *Wearse* v. *Peirce, supra,* the court ruled, as the report of the case states, " that although the notes were given to defraud the creditors of the tenant, yet if the jury should be satisfied that they were without consideration, that would be a good defence to the action," and this ruling was sustained on appeal. If this ruling is correct, and it seems plain that it is, then, as against Tinkler, Brady would have a valid defence, and if this defence existed against Tinkler, it must, under our law, be valid against his assignee.

The act of Tinkler in reconveying, and that of Brady in accepting the land under that conveyance, were not fraudulent. A late writer says : " Though a reconveyance can not be enforced, the fraudulent vendee is said, in some of the cases, to be under a high moral and equitable obligation to restore the property. The law is not so unjust as to deny to men the right, while it is in their power to do so, to recognize and fulfil their obligations of honor and good faith. And until the creditors of the vendee acquire actual liens upon the property they have no legal or equitable claims in respect to it, higher than, or superior to, those of the grantor." Wait Fraud. Conv., section 398. The restoration of the property under the circumstances of this case was not a fraudulent act, and as

the notes grew out of that transaction the appellee did not, in making his defence of want of consideration, plead his own fraud.

We have not considered the question whether relief by cancellation is proper in such a case as this, for that point is not discussed, no question having been made as to the appropriateness of the remedy sought. We have confined our discussion, as we do our decision, to the points argued, and have not undertaken to decide whether this case does or not belong to the class where a voluntary act will bar a right to relief by decree for cancellation. In doing this we have not done harm to any substantial right of appellants, for, if the bank was not entitled to foreclose the mortgage and enforce the notes, it can make little difference whether they are ordered cancelled or not.

Judgment affirmed.

