## L. BICOCCHI V. THE CASEY-SWASEY COMPANY ET AL.

### No. 577.—Decided November 29, 1897.

**1.  Fraudulent Trust—Creditors—Rights After Trust Executed.**

Plaintiff, buying a lot, had title made to one who held in trust for him—doing this to defraud his wife, from whom he was separated, of her community rights—improved and occupied it, and seven years later received a deed from the trustee, who had in the meantime obtained credit on the faith of the deed to him and his own representations that he owned the property. After this last conveyance these creditors attached and had foreclosure on the lot in suits against the trustee. Held, that such creditors acquired no rights in the property by these judgments as against plaintiff, and he could maintain suit against them to remove the cloud upon his title. (Pp. 261-272.)

**2.  Same.**

While the deed to the trustee was fraudulent under Rev. Stats., art. 2544 (the wife, though not a creditor, being one of the "other persons" thereby protected), and the law would not afford the parties to such fraud a remedy if the property was seized for the debts of the trustee while title remained in him, the rule was otherwise after the trustee had conveyed. (Pp. 263, 264.)

**3.  Same—Consideration.**

There was a sufficient consideration for the deed from the trustee to plaintiff, in the moral obligation resting upon the former to so convey, which the courts, though they will not enforce, will uphold when performed. (P. 264-268.)

**4.  Same—Estoppel.**

Plaintiff was not, by permitting the title to remain in the name of the trustee, nor by the latter's statements that he owned it, estopped from claiming the land as against the creditors who had acquired no lien or fixed right in the property while it stood in the trustee's name. (Pp. 268-272.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

L. Bicocchi sued the Casey-Swasey Company and the Texas Furniture Company to remove clouds from his title to certain real property. On trial before the court plaintiff was denied a recovery and the liens claimed by defendants against the property were held valid. Plaintiff appealed, and on affirmance of the judgment obtained a writ of error.

*John W. Wray*, for plaintiff in error.—Appellees could not take advantage of their ignorance of the trust relation existing between appellant and Mazza, or the purposes for which it was formed, to affix upon appellant's absolute property a lien, and enforce the same to create a fund with which to pay Mazza's debts, after the trust relation had been dissolved and Mazza had restored the property, as he ought to have done, to appellant. Cooper v. Lee, 75 Texas, 119; Clark v. Rucker, 7 B. Mon., 583; Stanton v. Shaw, 3 Baxt., 12; Davis v. Graves, 29 Barb., 480; Hutchins v. Sprague, 4 N. H., 469; Cramer v. Blood, 57 Barb., 164, 48 N. Y., 684; Thomas v. Goodwin, 12 Mass., 142; Bishop, Contracts, 812; Bank v. Brady, 96 Ind., 499; Powell v. Ivey, 88 N. C., 256; Bump, Fraud. Conv. (4th ed.), 232.

*Ross & Terrell*, for defendants in error.—Bicocchi, having purchased the property and having the deed made in the name of Mazza, and

having so left it from October, 1889, to April, 1895, and also had it rendered for taxes and insured in his name, mortgaged by him, and part of the time rented to and occupied by renters other than Bicocchi, enabled him to appear to the public as he represented to be—the real owner of the property—and thereby obtain credit upon the faith of such ownership, and appellees having relied upon the truth of such statement and sold their goods, Bicocchi is now estopped to allege that Mazza was not the real owner of same, and the conveyance back to him without consideration is null and void as to the appellees. Waite, Fraud. Con., secs. 387, 9; Story, Equity Juris., secs. 349, 384, 385, 386, 391, 392; Bishop, Contracts, secs. 641, 642; Savings Bank v. Buck, 27 S. W. Rep., 342; Peck v. Jones, 30 S. W. Rep., 382; Roy v. McPherson, 11 Neb., 198; Hudson v. Morriss, 55 Texas, 595.

The title and possession having been left in Mazza, and upon the faith of the ownership of same Mazza having obtained credit, when without it he was wholly insolvent, the legal and equitable title was vested in him, and if Bicocchi attempted to set up any equitable claim to same then the fraud attempted by him upon his wife in taking the title in Mazza excluded the idea of a trust, as no trust could arise out of a fraud, and still left the legal and equitable title in Mazza, and Bicocchi would be estopped to deny him to be the owner. Same as supra; 10 Am. & Eng. Encycl. Law, 57 and 58; Eastham v. Rountree, 56 Texas, 110; Susong v. Williams, 1 Heisk, 625; Bishop, Contr., secs. 641, 642.

Though the taking of the title in Mazza may not have been with a fraudulent intent, still, leaving it there surrounded by the facts and circumstances and with the results plead, Bicocchi must be conclusively taken to have intended the natural and logical results of his acts, to give to Mazza a fictitious credit, which he could not have obtained if the truth had been known; such acts were a legal fraud as to creditors of Mazza, and Bicocchi is now estopped as against creditors dealing upon the faith of the truth of such facts to assert any equitable or other interest in the land. Peck v. Jones, 30 S. W. Rep., 383; Lewis v. Simon, 72 Texas, 474.

The deed from Maddox to Mazza conveyed a title to the property to Mazza, but it was done by direction of Bicocchi with the intent to defraud his wife out of the property rights in same, and a conveyance from Mazza to Bicocchi without consideration was a voluntary conveyance made to defraud his creditors and as to them void. Rev. Stats., art. 2554; Bump, Fraud. Conv., 222; Waite, Fraud. Conv., sec. 387; Susong v. Williams, 1 Heisk., 625; Chapin v. Pease, 10 Conn., 69; Budd v. Atkinson, 30 N. J. Eq., 530; Allison v. Hagan, 12 Nev., 38; Maher v. Swift, 14 Nev., 324; Keel v. Larkin, 83 Ala., 142; Jose v. Hewett, 50 Me., 248.

Appellant's conduct with reference to the ownership of the land in question and his purpose in so concealing the real owner, amounted to a representation, by intentional act, of ownership of same in Mazza, and appellees having relied upon the truth of same, and believing Mazza the

real owner, sold to him upon the faith of such ownership, and appellant is now in equity estopped to deny the truth of his representation. 1 Pomeroy, Eq., 403; 2 Id., 803, 804, 808; Waite, Fraud. Conv., secs. 235, 236, 387; Susong v. Williams, 1 Heisk., 625; Chapin v. Pease, 10 Conn., 69; Budd v. Atkinson, 30 N. J. Eq., 530; Roy v. McPherson, 11 Neb., 198; Westbrook v. Guderian, 22 S. W. Rep., 59; Greer v. Mitchell, 26 S. E. Rep., 308; Collins v. Corwith, 69 N. W. Rep., 349.

*J. C. Terrell, Jr.*, for defendants in error, in support of a motion for rehearing, which was overruled, urged:  The term moral obligation as a valuable consideration has been wrongly injected into the law, and when used is always except in three decisions noted by the courts referable to a once valid or voidable contract that has ceased to be enforcible by some positive provisions of the law.  Bishop, Cont., 44; 3 Am. & Eng. Encycl., Law, 840; Deshon v. Wood, 148 Mass., 133; Wennal v. Adney, 3 Bos. & Pul., 247; Eastwood v. Kenyon, 11 Ad. & El., 438; Beaumont v. Reeve, 8 Q. B., 483-487; Cook v. Bradley, 7 Conn., 57; Mills v. Wyman, 3 Pick., 207; Dodge v. Adams, 19 Pick., 429; Updike v. Titus, 2 Beasley (N. J.), Ch., 153; Nightingale v. Barney, 4 Greene, (Iowa), 107; Wiggins v. Keizer, 6 Ind., 257; Eakin v. Fenton, 15 Ind., 59; Hamor v. Moore's Admr., 8 Ohio St., 239; Bates v. Watson, 1 Sneed (Tenn.), 376; Early v. Owen, 68 Ala., 174; Potter v. Gracie, 58 Ala., 303; Lloyd v. Fulton, 91 U. S., 478; Warden v. Jones, 2 De G. and J., 76; Trowell v. Shenton, 8 Ch. D. 318; Spurgeon v. Collier, 1 Eden, 55; Randall v. Morgan, 12 Ves. Jr., 67.

BROWN, ASSOCIATE JUSTICE.—In this case the Court of Civil Appeals adopted the findings of fact filed by the judge of the trial court, from which we make the following condensed statement of the case:

In October, 1889, L. Bicocchi bought the lot in controversy from R. E. Maddox for the sum of $1150; one half was paid in cash at the time by Bicocchi, and for the other half of the purchase money D. Mazza gave his note, which note was afterwards paid by plaintiff in error.  The deed to the lot was made by Maddox to D. Mazza upon the agreement and understanding between Bicocchi and Mazza, that the latter should hold the title for the former until such time as it should be desired by Bicocchi, when Mazza should convey the land to him. Mazza married the sister of the plaintiff in error.

Within a short time after the purchase of the lot Bicocchi caused a house to be built upon it at a cost of $3500.  For some time he rented out the lower room of the house, collecting the rent therefor himself, and used the upper story of the building for sleeping rooms for himself. During the four years preceding April, 1895, Bicocchi had carried on a business of his own upon the ground floor of this building and had used and occupied the upper story for himself, and during all the time since he purchased and built upon it he had the actual possession of the property himself or was holding it by tenant to whom he rented it.  The prop-

erty was insured and assessed for taxes in the name of D. Mazza, but the premium for insurance and the taxes were paid with money furnished by Bicocchi.

At the time that the plaintiff in error bought the lot and had it deeded to Mazza he was a married man and has so continued ever since, but his wife at that time lived in the city of New Orleans in the State of Louisiana, where she has continued to live, and he then and has since resided in the city of Fort Worth, Texas. They had one child, a daughter, who was with the father in Fort Worth and kept at a boarding school in that city.

The Court of Civil Appeals finds that the deed was made to Mazza in anticipation of divorce proceedings by the wife and for the purpose of defrauding her of her interest in the lot or the money invested in it. The title to the lot remained in the name of Mazza until April 3, 1895, when he conveyed it to Bicocchi in compliance with his agreement and without other consideration. During the time that the title remained in the name of Mazza plaintiff in error borrowed money from a loan company in Fort Worth, for which Mazza gave a mortgage upon the lot to secure the payment of a note given by the latter for the money so borrowed, but the note was paid by Bicocchi himself.

During all the time between the making of the deed to the lot in question in the name of Mazza and the time that he conveyed it to Bicocchi the former was a grocer and retail liquor dealer in the city of Fort Worth. Casey-Swasey Co. was a corporation engaged in the mercantile business in the said city of Fort Worth, and between December 1, 1894, and April 3, 1895, sold to Mazza goods for which the debt sued upon as hereafter stated was contracted. In August, 1894, Mazza made a report of his financial condition to Bradstreet's Agency, which was doing business in the city of Fort Worth, and in that report in writing represented that he was the owner of the property in question, which he valued at $4000, and in January, 1895, he made a statement of his financial condition to Casey-Swasey Co., in which he represented that he owned the said property and valued it at $5725. The goods which were purchased by Mazza from Casey-Swasey Co. were sold by them upon the faith of the representations made by Mazza that he owned the property aforesaid as well as other property.

In 1894 D. Mazza, being indebted to the Texas Fixture Company, a corporation doing business in the city of Fort Worth, for fixtures sold by that company to him, gave his note for the amount of his indebtedness and executed a chattel mortgage to secure the same upon the fixtures so purchased by him, and he requested that company that the mortgage should not be placed upon record, representing that he owned the property in controversy as well as other property and was entirely solvent, and relying upon the representations so made the Texas Fixture Company did not place the mortgage of record.

On the 6th day of April, 1895, D. Mazza made and delivered a mortgage on all of his property subject to execution, in which he preferred

certain creditors, among whom was Bicocchi, who was preferred for a debt of $3000 due to him from Mazza, and also a bank of Fort Worth was preferred for a note of $2000 on which Bicocchi was the surety of Mazza. This mortgage did not include the property in controversy, without which the property of D. Mazza was inadequate to pay his debts.

On the 8th day of April, 1895, the Casey-Swasey Co. and the Texas Fixture Company instituted suits in the County Court of Tarrant County against D. Mazza for the debts due each, and in each suit caused an attachment to be issued and levied upon the property in controversy. Judgment was rendered in each case for the debt and foreclosing the lien of the attachment upon the lot.

Bicocchi, not being a party to the suits above named, instituted this suit after the judgment had been rendered foreclosing the lien upon the lot, for the purpose of removing the cloud cast upon his title by the said judgments, and upon a trial in the District Court of Tarrant County without a jury the court gave judgment for the defendants, which judgment was affirmed by the Court of Civil Appeals.

Upon the facts of this case the following legal questions are presented for our determination:

1. Was the conveyance of the property by Mazza to Bicocchi made without consideration?

2. Did the creditors of D. Mazza, the defendants in error, acquire a right in the property in controversy which they could enforce against the land after it was conveyed to Bicocchi?

Article 2544 of the Revised Statutes reads as follows: "Every gift, conveyance, assignment, or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void." Under this statute we do not consider it material to determine whether the wife could be considered a creditor or not, because she, having a community interest in the land, would be embraced in the language, "or other persons of or from what they are or may be lawfully entitled to;" and if it be true that Bicocchi in causing the deed to be made to Mazza intended thereby to defraud his wife of her community rights in the property or the money paid for it, then the conveyance to Mazza would come within the terms of the article above quoted. We shall therefore consider the question as if it were a transaction made and entered into by the parties for the purpose of defrauding the creditors of Bicocchi.

If Bicocchi purchased and paid for the property and caused the same to be deeded to Mazza for the purpose of defrauding his wife, and Mazza accepted it knowing the intention of Bicocchi, the ownership of the property was not in fact vested in Mazza, but the law in order to

discourage such transactions would refuse to interfere to aid either party to the fraudulent transaction, and the legal title being by the deed vested in Mazza the property could be subjected to his debts by his creditors while it so remained, and he could have transferred the property to any other person. The ground upon which the creditors of a fraudulent grantor can subject the property in the hands of the fraudulent grantee to their debts is, that the title does not pass by the conveyance, but really remains in the grantor himself.

In the case of Bank v. Lyle, 7 Lea (Tenn.), 431, the question of the relative rights of creditors of the fraudulent grantor and fraudulent grantee of the property was ably discussed and decided. In that case one O'Neal had made a fraudulent conveyance of his property to Lyle, and the creditors of the latter had levied attachments upon it, thereby securing a lien upon the property. The plaintiff bank, which was a creditor of O'Neal, intervened in the suit and claimed priority in the distribution of the funds derived from the sale of the property. The court held that the plaintiff, the creditor of O'Neal, was entitled to the preference over the creditors of Lyle. The court said: "It being decided that his pretended purchase was void, O'Neal had parted with nothing by his pretended sale, and the debt due to him stood as though there had been no transfer by him."

Although the courts will not interfere and aid a fraudulent grantor to enforce the promise to reconvey, on grounds of public policy—that is, to discourage such transactions,—yet if the grantee in compliance with such agreement has reconveyed the property to the grantor such reconveyance will be upheld. Courts of equity recognize that there is a moral obligation resting upon the fraudulent grantee to execute the trust which he has undertaken, and although they will not enforce its execution, they will uphold it when performed. In the case of Swift v. Holdridge, 10 Ohio, 231, that court said: "An honest man will not take a fraudulent conveyance. If a man holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty, he will restore it to those to whom it belongs: he ought to give it back to him from whom he received it, that it may be applied to his debts, if wanted, or to his benefit, if not necessary for this purpose. The law, to discourage frauds, does not compel him to restore it to the fraudulent grantor; yet no man will retain it for a moment, who desires the reputation of honesty or possesses the sense of justice." See also Waite on Fraud. Conveyances, sec. 398, p. 545.

We conclude that the correct rule, and that which is supported by authority and sound reasoning, is that, when the fraudulent grantee has in compliance with his verbal agreement made a reconveyance of the property to the fraudulent grantor, the moral obligation under which he placed himself to make this reconveyance is a valuable and sufficient consideration to support the deed of reconveyance. While the legal title to the property remained in Mazza, his creditors might have subjected it to the payment of their debts, and if they had taken proceedings by

which they fixed a lien upon the property before the conveyance was made, their rights would be superior to those of Bicocchi, but having failed to secure any right in the property itself before the conveyance was made, they cannot now reach it in the hands of Bicocchi, because his right to have the property reconveyed was equally binding as were the rights of the creditors of Mazza to have their debts paid; and Mazza having conveyed the property in satisfaction of a promise to do so, that conveyance must be held to be good against the debts of the defendants in error.   Clark v. Rucker, 7 B. Monroe (Ky.), 583; Powell v. Ivey, 88 N. C., 256; Stanton v. Shaw, 3 Jere Baxter (Tenn.), 12; Davis v. Graves, 29 Barb., 480; Waite on Fraud. Conveyances, secs. 387-398; Bump on Fraud. Conveyances, p. 224; Petty v. Petty, 31 N. J. Eq., 14; Irion v. Mills, 41 Texas, 310.   The following cases bear upon this question, but are not so directly in point:   Hutchins v. Sprague, 4 N. H., 469; Bank v. Brady, 96 Ind., 498; Thomas v. Goodwin, 12 Mass., 140.

The Court of Civil Appeals in affirming the judgment of the District Court seems to have proceeded upon two grounds: (1) that D. Mazza, having represented that the property in question belonged to him and obtained credit upon the faith of his ownership of it, practiced a fraud upon his creditors when he conveyed the property to Bicocchi and that his deed so made was void under the statute of frauds; (2) that as to the creditors of Mazza who trusted him on the faith of his ownership of the property, Bicocchi was estopped to deny Mazza's title, by reason of the fact that he permitted the title to remain in Mazza's name for seven years and that Mazza represented the property to be his.   In support of these positions the court cites the following authorities: Chapin v. Pease, 10 Conn., 69; Budd v. Atkinson, 30 N. J. Eq., 530; Besson v. Eveland, 26 N. J. Eq., 468; Susong v. Williams, 1 Heisk. (Tenn.), 625; Roy v. McPherson, 11 Neb., 197; Peck v. Jones, 30 S. W. Rep., 382; Waite on Fraud. Conveyances, sec. 387.

The case of Chapin v. Pease was decided solely upon the ground that the reconveyance was voluntary.   In other words, the court held, that the fraudulent grantee was under no obligation, legal or moral, to reconvey the property to the fraudulent grantor in accordance with the agreement made, and that such deed was a voluntary conveyance and therefore void as to creditors.   This is an assertion of the doctrine directly the opposite of that which we have stated as our conclusion and supported by the authorities cited.   If the position that there is no moral obligation upon the fraudulent grantee to reconvey to the grantor be sound, the conclusion is irresistible that the reconveyance would be voluntary and void as to creditors; the falacy lies in the premise.   But the Court of Civil Appeals does not base its opinion upon the ground that the deed was voluntary, but upon the idea that the creditors of Mazza by his fraud and by estoppel upon Bicocchi acquired some kind of undefined right in the property.   The authorities which we now review seem to have been cited in support of this position.

In Budd v. Atkinson, 30 N. J. Eq., 530, the decision of the court is rested upon the conclusion that there was no trust as between the grantor and grantee, but that the title absolutely vested and was intended to vest in the grantee at the time, and therefore the reconveyance from the son to the father was without consideration and void as to creditors. And in the case of Besson v. Eveland, 26 N. J. Eq., 468, the question was as to whether or not the property in controversy had been purchased with the funds of the wife, and was therefore her separate property, and the court held that it devolved upon the wife to establish that fact and that the testimony was not sufficient to prove that the property had been purchased with her separate funds. In each of these cases the Chancellor mentions with disapproval the fact that the property had been permitted to remain in the name of the grantee and that thereby he was enabled to procure credit upon it; but in neither of them is the decision placed upon that ground.

Susong v. Williams, cited above, involved the validity of 'a conveyance from a son to his mother, based upon what was claimed to be an agreement to reconvey at the time the mother conveyed to the son. The facts, briefly stated, were, that the parties lived in the State of Tennessee, and during the war Mrs. Williams became alarmed lest her property might be confiscated by the United States Government, to prevent which she conveyed the land in question to her son, Joseph A. Williams. At the time this conveyance was made it was stated that after the war should close, if the mother should desire it, or if the other heirs of the deceased father were dissatisfied, Joseph would reconvey the property to her. The son went into possession of the property and so remained for a number of years with the title in his name, during which time he contracted the debt for which it was sought to sell it. After contracting the debt the son reconveyed to the mother. Upon this state of facts the court held that no trust ever existed nor was intended to be created, but that it was intended at the time to vest the title of the property in Joseph A. Williams, "and the subsequent reconveyance under the facts and circumstances of this case must be held to have been made without consideration, and was fraudulent by construction against existing creditors." It is true that in this case the court refers to the fact that the possession of the property had enabled the son to perpetrate fraud upon his creditors and states that the mother was estopped to deny the title; but that question was not involved in the case and in fact the whole case was disposed of upon the question of its being a voluntary conveyance. That case was decided in 1870, and in 1873 the case of Stanton v. Shaw, 3 Jere Baxter (Tenn.), 12, before cited herein, was decided by the Supreme Court of that State, in which it was held that, where a conveyance was made for the purpose of defrauding the creditors of the grantor, but such creditors entered no proceeding against the fraudulent grantee nor fixed any lien upon it as the property of such grantee before it was reconveyed to the creditor, the creditors of the grantee could not subject such property to their debts in the hands of a

fraudulent grantor, to whom it had been reconveyed. If the court in Susong v. Williams intended to hold the opposite of this doctrine, then the later case of Stanton v. Shaw had the effect to overrule the former.

Roy v. McPherson, 11 Neb., 197, is also cited by the Court of Civil Appeals, and upon examination of it we find that the creditor of the fraudulent grantee had recovered a judgment and fixed a lien upon the property before it was reconveyed. This necessarily disposed of that case; yet the court does indulge in remarks as to the wife being estopped by reason of the title remaining in the name of the husband for so many years.

Peck v. Jones, 30 S. W. Rep., 382, contains some remarks which might be construed to support the proposition laid down by the Court of Civil Appeals in this case, but the question was not involved in that case. Waite on Fraudulent Conveyances, sec. 387, which is cited by the court, gives what the author considers the point decided in Susong v. Williams, and Budd v. Atkinson, in which we think he mistook the rhetoric of the judge for the decision of the court. No opinion is expressed endorsing the decisions, but the following adversary proposition is stated: "Where, however, a fraudulent mortgagee reconveys the land to the fraudulent mortgagor before any lien attaches in favor of the creditors of the former, they cannot subject the land to the payment of their debts." Whatever weight is to be given to this work is clearly against the position it has been cited to support. See also section 398.

We have examined all of the authorities cited by the Court of Civil Appeals and by the defendant in error, and such others as we can find, but have found no case in which a court has based its decision upon the doctrine that the fraudulent grantor after reconveyance was estopped to deny the rights of creditors of the fraudulent grantee because the title was permitted to remain in the name of the grantee, or because the grantee represented the property to be his own and obtained credit upon faith of his ownership.

The ownership of property carries with it the right of disposition, and an insolvent debtor, so long as he does not act in bad faith, may sell his property, or he may convey it to one creditor in payment of his debt in preference to all other creditors, or he may, in preference to other creditors, give a mortgage upon it to secure such creditors as he may choose, provided that the creditor who is benefitted by such preference acts fairly in the matter. Bump on Fraud. Conveyances, 172 and 180; Dance v. Seaman, 11 Grattan, 778; Edwards v. Dickson, 66 Texas, 614. In the case last cited, Judge Gaines, speaking for the court, said: "The right of a creditor to purchase of a debtor in failing circumstances a sufficient amount of property to pay his debt is well recognized by authority, although the necessary consequence of the transaction is to hinder and delay other creditors in the collection of their debts. This principle follows as a deduction from the right of an insolvent debtor to prefer one creditor to another,

and is subject to the qualification, that no more property must be transferred than is essential to pay the debt at a fair valuation, and that the transaction must be open and bona fide; and in saying that the transaction must be made in good faith, we understand, it is meant, that the sale must be absolute, that is, not attended with any secret trust for the benefit of the debtor, and must be a real and not a mere colorable transaction. See Greenleve v. Blum, above cited. If it be a real transfer of the property unaccompanied with any secret understanding or trust on behalf of the debtor, and with intent to satisfy the debt, and no more property be sold than is necessary for that purpose, then it matters not whether or not the debtor intended to hinder or delay his creditors, or whether the creditor knew or ought to have known of such intent, if it existed." In accordance with this doctrine, which is not questioned in any court that we know of, if Mazza conveyed the property to Bicocchi in compliance with his agreement to do so, the conveyance so made must be held good, although Mazza may have had the intent to defraud the defendants in error by making such conveyance, because the moral obligation which Mazza owed to the plaintiff in error to convey the property to him in execution of the trust was equal to his obligation to the defendants to pay their debts. Irion v. Mills, 41 Texas, 310; Frazer v. Thatcher, 49 Texas, 26; Parker v. Coop, 60 Texas, 114; Iglehart v. Willis, 58 Texas, 306. The cases of Irion v. Mills, Frazer v. Thatcher and Parker v. Coop, cited above, were cases of trust unaffected by fraud and could have been enforced against the trustee, but when we reach the conclusion that Mazza was under a moral obligation to convey to Bicocchi and that such moral obligation was a sufficient consideration to support the deed, the conveyance having been made, this case is practically the same as those, for the reason that the only difference which the law makes between the two classes of trusts is that the one can be enforced as between the parties to it and the other cannot; and when that which could not be enforced has been executed, then all distinction is abolished and they stand upon a parity. Such a conveyance could not be held to be fraudulent. The fraud practiced in creating the debts could not avoid the deed thus made.

We come now to the question, did the defendants in error acquire any right in this property which the plaintiff in error is estopped to deny after the property was conveyed to him? We must bear in mind the true issue which arises upon the facts of this case. Bicocchi is not denying that Mazza had title to the lot when the debts were contracted, but claims that Mazza's title is now vested in him by the conveyance, free from the claims of defendants in error.

The learned judge who wrote the opinion of the Court of Civil Appeals said: "Mazza would be estopped from disputing the truth of the representation made when the credit was obtained. Does Bicocchi occupy a better position? He is not an innocent purchaser without notice. He had the conveyance made to Mazza originally for a purpose

that the law condemns; and whether it does or not, he not only caused Mazza to conceal the real ownership, but actively held him out for seven years as the owner, and certainly placed it within the power of Mazza to deceive appellees as was done. In order that Mazza might securely keep appellant's secret, and hence keep faith with him, he was bound to represent himself as the owner to his creditors and the commercial agency or go out of business, as his business was done on a credit. But if his representations to appellees were not the necessary, they were certainly the natural consequence of what appellant had undertaken through him to do. That one is presumed to intend the natural consequences of his own acts is a familiar maxim, and we think should have application here." The court in the foregoing extract does not explicitly state but necessarily includes the following propositions: (1) That by reason of the false representations made by Mazza and the reliance placed upon them by the defendants in error, the latter acquired a right to have their debts paid out of this particular property, and (2) that Bicocchi is estopped by his acts to deny the right of the defendants in error to have this property sold for the payment of their debts. The Court of Civil Appeals adopted the conclusions of fact filed by the trial judge, in which we find nothing to sustain the argument contained in the foregoing extract, that "he (Bicocchi) not only caused Mazza to conceal the real ownership but actively held him out for seven years as the owner." The findings of fact by the trial court show that Bicocchi purchased and paid for the lot and caused it to be deeded in the name of Mazza, which deed was recorded,—after which the plaintiff in error built a house upon it and occupied it all the time, either by himself or a tenant, the greater part of the time using it himself, and when not doing business in the house himself he exercised ownership over it, rented it out, and collected the rent. Every visible act of ownership was exercised by the plaintiff in error. We therefore consider the case upon the facts as found by the trial court and adopted by the Court of Civil Appeals, in determining whether Bicocchi is estopped to deny the right claimed by the defendants in error in this piece of property.

Estoppel, if allowed to be complete, as against Bicocchi, could not confer upon the defendants in error as creditors greater rights than they would have if the representations of Mazza and that which appeared upon the face of the deed were true. Baylor County v. Craig, 69 Texas, 330. In the case last cited this court, quoting from Gressler v. Powers, 81 N. Y., 57, said: " 'As a general rule the estoppel created by false representations acted upon is commensurate with the thing represented, and operates to put the party entitled to the benefit of the estoppel in the same position as if the thing represented were true.' " This is a reasonable and well established rule of law, for it certainly could not be contended that a false statement made by Mazza could give to his creditors a greater right in his property than they would have if he had told them the truth. If Bicocchi is estopped to deny the statements

made by Mazza as to his ownership of the property, then, considering those statements as true, what rights would the creditor have acquired in that property? For example, let us suppose that Mazza was the real owner of the property, without any trust connected therewith, and made the same statements as to ownership, and that the same creditors acting upon the faith that he was the real owner contracted the debts as they did, would they have acquired a lien upon this property? We have never seen such a proposition asserted in any law book and we presume that no one would claim that such a thing could exist; yet nothing less than a lien in favor of defendants in error will support the judgment in this case. A case in point is where a debtor conveys land to one who is a bona fide purchaser for value, or gives a chattel mortgage upon personal property, the deed or mortgage not being recorded. Under our statutes (Rev. Stats., art. 625,—on the subject of Conveyances,—and Sayles' Rev. Stats., art. 3190b,—governing Chattel Mortgages) every deed or mortgage which is not recorded is declared to be void as to creditors, but our courts have uniformly held that the word "creditors" as there used means such creditors as have acquired some right in the property itself, as by mortgage, or by attachment, levy of execution, or some other method of fixing a lien upon it. Grace v. Wade, 45 Texas, 522; Overstreet v. Manning, 67 Texas, 663. In such case the creditor is misled by the appearance of the title as much as in this case, but under the ruling of our court he acquires no right by reason of the confidence that he placed in the condition of the title, which delusive condition was caused by the failure of the grantee to put his deed upon record.

So far as it affects the creditors of a grantee, the rule with regard to their right must be the same, whether the secret trust be created with or without fraudulent intent, because the intent of the person who creates the trust to commit fraud upon his creditors or some other person can in no wise work an injury to the creditors of his grantee. The fact that the title appears to be in the person to whom the credit is given has the same effect upon his creditors whether it be coupled with a trust fraudulent or honest. If the rule of estoppel laid down by the Court of Civil Appeals be adopted, then, whenever one holds property under a secret trust for another and shall make false statements as to the real ownership of it, and thereby procures credit upon the belief that his statements are true, the beneficiary in such trust must be held responsible for the false statements so made and for the false appearance of the title as shown by his consent upon the record, and by these facts be estopped to claim the property as against creditors. It has been decided by this court that in such a trust, where there is no fraud, the creditor of the grantee in whom the title appears to be acquires no lien, even by a judgment rendered against his debtor before conveyance is made to the beneficiary; such trusts not being affected by the statute on the subject of registration. Irion v. Mills, 41 Texas, 310; Parker v. Coop, 60 Texas, 111.

The estoppel applied in this case goes beyond the limits of the rules of law, and the further proposition that one who extends credit to the apparent owner of property, relying upon false statements of owner-ship, acquires a fixed right in such property, would lead to many complications and produce more injustice than that which has aroused the indignation and enlisted the sympathies of judges in the cases cited, leading them to expressions which are more elegant than accurate. We will give some illustrations of what we regard as prob-able consequences of that rule. Let us suppose that before Mazza con-veyed to Bicocchi, a creditor of the former, who did not know of the existence of the property in question and did not rely upon it in giving credit, had levied an attachment upon it. Such attachment levied be-fore the conveyance was made would have held the property as against Bicocchi. If the defendants in error holding the same debts, contracted upon the same representations by Mazza and under the same belief as to the truth of those representations, had subsequently to the first at-tachment, but also before the conveyance to Bicocchi, levied a writ of attachment upon the same property, claiming priority over the first attaching creditors, because their debt was contracted upon their faith in the statements of Mazza, and with reference to his ownership of this particular property, could they have maintained their claim of priority over the prior attaching creditors? We think clearly they could not. If both attachments had been levied in the same order after the con-veyance was made to Bicocchi, the first attaching creditor's right would be superior to the second attachment, but would be inferior to the right of the grantee; and yet according to the holding of the Court of Civil Appeals in this case the second attachment, which could not hold the property as against the first attachment, would be declared to have a right of foreclosure against Bicocchi, whose right would be superior to that of the first attaching creditor. These inconsistencies and compli-cations show that the proposition upon which this judgment rests is at variance with the well settled rules of law by which alone courts may determine upon the rights of citizens.

Judicially looked at from any standpoint, this case finally resolves itself into the question first stated, was Mazza under moral obligation to convey to Bicocchi the property in accordance with his agreement, and did that moral obligation constitute such a consideration as would in law be sufficient to sustain a deed of conveyance when made in pur-suance of such agreement? Having reached an affirmative answer to that question, the case must be determined in favor of the validity of the conveyance made by Mazza to the plaintiff in error.

The strongest objection urged to such a conclusion is that the fraud-ulent grantor could not enforce the trust, which proves that he had not a legal right, but does not prove that he who has undertaken the trust ought not in good conscience and good morals to execute that trust. It is well known to courts that the moral sentiment of all communities holds a fraudulent grantee, who takes advantage of the law to repudiate

his trust and appropriate the trust fund, to be unworthy of confidence, and courts, as we have shown, conform to this sentiment in holding that such grantee is under moral obligation to keep faith with one who has trusted him.    Many illustrations might be made of this doctrine of the law, but we will content ourselves with one, which we think is sufficient.    Suppose that Mazza had owned this property free from a trust and had contracted his debts in the same manner that he did, upon the same character of representations, which were true, and that among other creditors he was indebted to Bicocchi in a sum equal to the value of the property, but that the debt was barred by limitation.    No one would deny that Mazza would be under a moral obligation to pay the debt, and if he had conveyed this property under such circumstances to Bicocchi in discharge of the debt barred by limitation and in consideration of his moral obligation to pay that which could not legally be enforced against him, the conveyance would certainly be a good and valid conveyance against the defendants in error.

It is well settled by the authorities that if a fraudulent grantee has paid out the trust fund to creditors of his grantor who might have received such fund from the grantor in payment of their debts, this will discharge the grantee from further liability to other creditors of the grantor, because by paying the fund to the creditors he has done what the law would compel him to do and what the debtor might have done himself. Hutchins v. Sprague, 4 N. H., 469; Thomas v. Goodwin, 12 Mass., 140. The effect of the deed to Mazza was to defraud Mrs. Bicocchi of her community interest in the property, and she might have maintained a · suit to declare the trust and enforce it, which would have the effect to vest the title in the community.    The conveyance from Mazza to Bicocchi vested the property in the community estate of Bicocchi and his wife and accomplishes all that a suit in equity would have accomplished. It annuls the fraudulent act of the parties and does justice to the wife. To deny this effect to the deed of Mazza, in which he conveyed the property to Bicocchi, would perpetuate the fraud against the wife, whose rights were superior to any claim that the creditors of Mazza might have in the property, they not having secured any lien thereon.

We have not found it necessary in this case to determine whether the continued possession of Bicocchi was sufficient to put the creditors of Mazza upon inquiry as to the real state of the title and thereby charge them with notice, but we think it proper to remark in conclusion that the fact of Bicocchi holding the actual and continuous open possession of the property from the time of its purchase was at least sufficient to meet any claim of the creditors that they were misled by any act of his save that which resulted in placing the title in the name of Mazza.

Upon the facts as found by the trial court and adopted by the Court of Civil Appeals, judgment should have been rendered for Bicocchi.    It is therefore ordered that the judgments of the District Court and the Court of Civil Appeals be reversed and that judgment be here entered in favor of the plaintiff in error, L. Bicocchi, against the defendants in

error, setting aside and annuling any lien which the judgments rendered in favor of the defendants in error against Mazza might appear to have upon the property in question, and removing all clouds from the title to said property cast upon the same by the rendition of the said judgments, the levy of the attachments, or the foreclosure of the liens thereof, and that the plaintiff in error recover of the defendants in error all costs in the several courts.

*Reversed and rendered.*