## J. J. STEPHENS v. J. B. ADAIR.

### No. 7096.

**1.   Fraudulent Sale Voidable, Not Void.** — A fraudulent conveyance is valid between the parties themselves, and can only be set aside by creditors, purchasers, or other persons intended to be defrauded. Although pronounced void by the statute, it is only voidable, because it is valid except as to the persons named. Rev. Stats., art. 2465.

**2.   Same—Fact Case.**—Stephens owned a hardware store, and Adair a half-interest in a flock of sheep.   They traded, Stephens giving his stock of goods for Adair's sheep.   After the goods had been partially invoiced the parties each executed to the other a bill of sale acknowledging payment.   The stock of goods was attached by a

creditor of Stephens. Upon this Adair refused to surrender possession of the sheep. Before judgment or sale Stephens discharged the attachment by payment of the debt. Suit against Adair for the sheep. He set up the facts, claiming that the consideration for the sheep had failed and his transfer should be avoided. *Held,* a charge by the court that such contract was void if made by Stephens to hinder or delay creditors, etc., was error. It was not void nor even voidable upon Stephens paying his debts.

3. Executed and Executory Contracts—Fraud.—While courts will not enforce executory contracts shown to be fraudulent, they will not aid the parties when such contracts are executed. The facts involved in the litigation show an executed contract. It was not necessary that the sheep be delivered to complete the sale.

APPEAL from Bell. Tried below before Hon. W. A. BLACKBURN. The opinion states the case.

*Monteith & Furman,* for appellant.—1. The court in its charge laid down a principle, without any qualification, as applicable to this case, which was clearly wrong in effect, and which raised an issue irrelevant and delusive as decisive of this case; stating that a transfer of property with intent on part of the vendor of hindering, delaying, and defrauding creditors would render such transfer also void as to the vendee receiving such transfer under all circumstances, the law being to the contrary. Such transfer is valid and binding as to the vendor and vendee, although the same would not be binding as between the vendor and his creditors; and the giving of said charge was a material error, because it provided a method for the discussion of the case depending entirely upon the intention of P. H. Stephens at the time he made the transfer of the property traded to Adair, independent of the intention of Adair when he received the transfer of said property from P. H. Stephens. Rev. Stats., art. 2465; Fowler v. Stoneum, 11 Texas, 500, 502, 507; McClenny v. Administrator, 10 Texas, 160; Lewis v. Castleman, 27 Texas, 419; Cameron v. Romele, 53 Texas, 238; Ford v. Rosenthal, 74 Texas, 28; Miller v. Koertge, 70 Texas, 165, 166; Lott v. Kaiser, 61 Texas, 665; Bump on Fraud. Con., chap. 16, secs. 436–439; Harralson v. Langford, 66 Texas, 111, 113.

2. If P. H. Stephens transferred his stock of merchandise to Adair for the purpose of hindering, delaying, and defrauding his creditors, and if Adair at the time of receiving said transfer had knowledge of such intention on the part of said P. H. Stephens, and said goods were levied upon by writ of attachment by a creditor of P. H. Stephens, but were not sold under any order of sale or other process of the court or any judgment issued in favor of such creditor, but before sale the claim of creditor was satisfied by P. H. Stephens, then the title of said Adair which he received from P. H. Stevens to said stock of merchandise was not annulled, or in any degree impaired by any act of the creditor, but he obtained a good and valid title to said merchandise as against P. H. Stephens and the creditors of P. H. Stephens; and the court erred in

charging the jury that defendant's plea of failure of consideration would be established by the proof of such a state of facts, and in further charging that J. J. Stephens had no better right or claim than P. H. Stephens to recover, which charge was a material error and greatly prejudiced the rights of plaintiff in this cause.    Fowler v. Stoneum, 11 Texas, 501; Miller v. Koertge, 70 Texas, 166, and cases cited.

*Harris & Saunders,* for appellee.—1.    The court did not err in that portion of its charge, for if the purpose of P. H. Stephens in selling to Adair was to hinder, delay, or defraud his (P. H. Stephens') creditors, and Adair and J. J. Stephens knew of such fraudulent intent, or by the use of ordinary care and prudence could have ascertained it, then the sale to Adair was undoubtedly void as to P. H. Stephens' creditors, and they had a right to attach the goods sold, and if they did so attach then the consideration for which Adair had executed the bill of sale had failed, and J. J. Stephens, by reason of his guilty knowledge and participation in his brother's fraud, would not be entitled in law or equity to recover from Adair on his so-called transfer from P. H. Stephens, the vendor to Adair, as Adair had never parted with possession of the sheep and other property mentioned in the bill of sale.    Castro v. Illies, 22 Texas, 479; Mills v. Howeth, 19 Texas, 257; Wright v. Linn, 16 Texas, 34; Humphries v. Freeman, 22 Texas, 45; Garahy v. Bayley, 25 Texas Supp., 294; Davis v. Sittig, 65 Texas, 498.

As to the duty of the court to frame his charge with reference to the issue and the evidence:    Rosenthal, Meyer & Co. v. Middlebrook, 63 Texas, 333; Wintz v. Morrison, 17 Texas, 372; Norvell v. Oury, 13 Texas, 30; Blum v. Simpson, 66 Texas, 84.

2.    If P. H. Stephens transferred his stock of hardware to Adair for the purpose of hindering, delaying, or defrauding his creditors, and if such intention was known to Adair and J. J. Stephens, or could have been known to them by reasonable and prudent inquiry, then the transfer was void as to the creditors of P. H. Stephens; and if the creditors attached the goods on the 12th or 13th of October, 1886, and P. H. Stephens induced Adair to sign a bill of sale to his property by assuring him he would settle the Olds Wagonworks debt, and that Adair should never have a moment's trouble about the goods, yet if P. H. Stephens, after obtaining Adair's signature to said bill of sale on that condition and consideration, refused to settle said debt as he had promised, but permitted the goods to be attached and advertised for sale, Adair had both a legal and equitable right to declare the trade off, notwithstanding P. H. Stephens may have settled the debt on the 26th December, 1886, the day before the goods were to be sold under the attachment; the consideration for which he had signed said bill of sale had failed, and J. J. Stephens is not entitled to recover in this suit on his pretended trade and assignment from his brother P. H. Stephens.

3. Merely getting a bill of sale from Adair was not proof of parting with his title to his property, as the sheep were never separated from the partnership flock of 1800 head or delivered to Stephens; neither was the mower nor feed. More especially is such the status of this case, as the condition on which Stephens induced Adair to sign the bill of sale was never fulfilled by Stephens, nor was the inventory ever completed of Stephens' goods so that he could deliver them to Adair. Morgan v. Taylor, 32 Texas, 366; Cleveland v. Williams, 29 Texas, 204; Spaulding v. Harvey, 7 Ind., 429; Magee v. Scott, 9 Cush. (Mass.), 148; Brandon v. Cabiness, 10 Ala., 155.

GARRETT, PRESIDING JUDGE, *Section B.*—This suit was brought by J. J. Stephens against J. B. Adair and J. S. Thomas for the recovery of 900 head of sheep and their increase and proceeds, or the value thereof. It was tried before a jury, and the verdict and judgment were in favor of the defendants. Motion for a new trial was made and overruled, and the case is properly before the Supreme Court for revision.

Appellant's claim is founded upon the purchase of appellee Adair's half-interest in a flock of sheep owned by Adair and his codefendant J. S. Thomas, which was transferred to P. H. Stephens by Adair, and by P. H. Stephens to the appellant J. J. Stephens. Adair admitted the bill of sale to P. H. Stephens, but pleaded failure of consideration, setting up specifically the facts upon which he relied to show it. J. S. Thomas answered, setting up his contract with Adair to care for the sheep, and his claim for the feed, shepherd's hire, etc., for which he prayed judgment.

During the summer and part of the fall of 1886 P. H. Stephens was engaged in merchandising in the town of Temple, in Bell County, dealing in hardware and wagons. J. B. Adair owned a half-interest in a flock of about 1800 sheep on a ranch belonging to him in Bosque County, called Buena Vista. The entire flock was in the charge of J. S. Thomas, who owned the other half-interest, and had charge of and cared for the entire flock under an agreement with Adair. P. H. Stephens and Adair entered into a negotiation for an exchange of the former's stock of hardware to the latter for his sheep. Stephens went to the ranch and looked at the sheep, and when he came back the trade was agreed upon. There is a conflict of evidence between Stephens and Adair about the price to be paid for the sheep, Adair claiming that it was $2.50 per head and Stephens claiming that it was $2. There is also some conflict about the price of the goods. Adair testified that a discount was to be allowed for hard stock. At any rate, the trade was that the goods were to be exchanged for the sheep, and the difference was to be settled for when the inventory of the goods should be made. Adair's entire interest in the sheep, estimated at 900, was sold

to Stephens, and Stephens' entire stock of hardware, wagons, etc., was sold to Adair. Stephens employed J. B. Webb, an experienced hardware man from Belton, to assist him and his clerk, A. Wehr, in making the inventory. Adair was also present and assisting. They worked with open doors and in the daytime, and were engaged two or three days in taking stock. During the time sales went on as usual, Adair taking the receipts if the goods sold had been inventoried, and Stephens taking them if they had not.

P. H. Stephens was indebted at the time of the sale to La Belle Wagon Company and the Olds Wagonworks; but neither of the claims was then due. During the taking of the inventory one Rogers, representing La Belle Wagon Company, came into the store and inquired if Stephens was selling out. Stephens replied that he was. Rogers asked for a settlement of his debt. Stephens claimed that it was not due, but settled with him by transferring farmers' notes to him.

Before the inventory was completed Stephens delivered a receipted statement to Adair for the stock of goods, as follows:

"TEMPLE, TEXAS, October 8, 1886.

"Mr. J. B. Adair, bought of P. H. Stephens, dealer in hardware, stoves, tinware, house furnishing goods, wagons, and farm implements.

"To stock of goods this day transferred, $1887. E. & O. E. Received payment.                    "P. H. STEPHENS."

And Adair executed to Stephens a bill of sale for the sheep, as follows:

"*The State of Texas, Bell County.*—Know all men by these presents, that I, J. B. Adair, of the State and county aforesaid, have this day sold to P. H. Stephens all my interest, which is a one-half interest, in a stock of sheep on a ranch in Bosque County, Texas, known as the Buena Vista Ranch. Total number of sheep on the ranch 1800, and my interest is 900 head. The consideration is a stock of hardware and implements this day transferred to me by said P. H. Stephens.

    [Signed]                    " J. B. ADAIR.

"Temple, Texas, October 8, 1886."

Adair testified that he signed this bill of sale on the morning of the 9th. Stephens left town and left Adair and Wehr to complete the inventory, Webb having also left on the evening of the 8th. There was a lot of goods in the showcase and some stoves still to be inventoried.

In the meantime one Richardson, who represented the Olds Wagonworks, arrived in Temple on Friday evening, October 8, to look after his claim against Stephens. He went in response to a telegram from one Elliott, his son-in-law, who was doing business in the same build-

ing with Stephens with no partition between them.  Elliott had previously talked to Adair about the claim, and the latter knew when he signed the bill of sale that Richardson was in town pressing Stephens for a settlement.  Adair spoke to Stephens about it, and he told him the debt was not due, and that he would settle it whenever it fell due; that it should give him no trouble.  Stephens paid Richardson a balance that was due him on a freight bill for the wagons, which he had agreed to pay, but declined to settle the notes, stating that they had not matured.  Richardson then procured an attachment against Stephens and levied on the stock of goods in the hands of Adair, either on the 12th or 13th of October, the evidence does not show definitely what date.  His claim was about $2200.  The goods were advertised for sale, presumably as perishable property, as it is not shown how, on December 27, 1886; but on the day before they were to be sold Stephens settled the debt in full by transferring farmers' paper in part and giving notes with his brothers J. J. and W. W. Stephens for the balance.  Neither Stephens nor Adair resumed possession of the goods, which were soon afterward destroyed by fire.

Adair notified Stephens in writing on October 13 not to take or handle the sheep, as he would not deliver them until his title to the goods was settled, and it was shown that they were not liable for Stephens' debt.  He also notified Thomas not to deliver them.

J. J. Stephens, the appellant, bought the sheep from his brother P. H. Stephens on October 9.  The latter testified that he had traded for the sheep because he had ascertained several days before from his brother that he could sell them to him for the same price at which he took them.  The consideration expressed in the bill of sale from P. H. to J. J. Stephens was $1800 for 900 head of sheep, evidenced by two promissory notes for $900 each, one due April 15, 1887, and the other December 1, 1887.  It was shown that J. J. Stephens had paid $730 on the first note.  He wrote a letter to Thomas in a day or two after the sale informing him that he had bought the sheep, to which he received no reply.  He again wrote, and Thomas replied October 24 that he had been notified by Adair to turn over the sheep to no one without instructions from him.

It conclusively appears from the evidence that J. J. Stephens knew that P. H. Stephens was indebted to the Olds Wagonworks when the sale of the stock was made.  No other indebtedness than that above mentioned was shown.  As to his solvency, P. H. Stephens testified he had about 300 cattle running on the range in Bell, Milam, and Falls counties, also a one-half interest in 400 acres near Rogers worth $15 per acre, on which he owed at that time $700, and does not state in whose name the title was; also a homestead and about $4000 worth of paper.

The following charge of the court is assigned as error, for which the appellant seeks to reverse the judgment against him:  "If P. H. Stephens

was indebted to other persons, and for the purpose of hindering, delaying, or defrauding them in the collection of their debts, conveyed the hardware and wagons to Adair, and if said Adair knew of such indebtedness and intent to hinder and delay creditors of P. H. Stephens, or if by the exercise of ordinary care and diligence in the matter could have ascertained such indebtedness and intention of Stephens, if you find he had such intention, then the sale would be void as to Stephens' creditors; and if such a creditor under such a state of facts attached the goods he would have the right to subject them to the payment of his debt, and under such a state of facts P. H. Stephens would not be entitled to recover anything against defendant; in other words, defendant's plea of failure of consideration would be established by the proof of such a state of facts so far as P. H. Stephens is concerned; and if J. J. Stephens knew of the existence of such a state of facts as those above enumerated, or knew such facts as would put a man of ordinary prudence upon inquiry whether or not said transaction with Adair was fraudulent, then in law he would occupy no better position than P. H. Stephens; and if you believe such to be the facts, you must find for the defendants."

This is the only assignment of error relied upon by the appellant, and the charge is simply assigned as error without pointing out in what respect it is erroneous. But appellant submits three propositions thereunder, which are substantially:

1.   That by said charge the jury were in effect erroneously instructed that a transfer of the goods by Stephens to Adair with the intent on the part of Stephens to hinder, delay, and defraud his creditors, would render the transfer void as between the parties themselves under all circumstances.

2.   Although Stephens sold his stock of goods to Adair with the intent to hinder, delay, and defraud his creditors, and Adair knew of such intent, yet the title to the goods was vested in Adair, and Stephens having paid off the claim of the Olds Wagonworks before there was any judgment against him, and before the goods were sold by order of the court, there was no failure of consideration; and the court erred in so charging the jury.

3.   The intent of Stephens to hinder, delay, and defraud his creditors, if it existed, by the conveyance of the goods, would not render the conveyance void unless such was the effect of it, and that the court should have so instructed the jury in connection with the testimony as to the solvency of Stephens.

We will consider the first and second propositions together. A fraudulent conveyance is valid and binding between the parties themselves, and can only be set aside by creditors, purchasers, or other persons intended to be defrauded. Although pronounced void by the statute it is only voidable, because it is valid except as to the persons named.

Rev. Stats., art. 2465; Fowler v. Stoneum, 11 Texas, 500. The conveyance by Stephens to Adair was valid as between them, although it may have been successfully attacked and set aside by the Olds Wagonworks as made with the intent to defraud them of their debt. It could have been set aside only to the extent of the debt. Adair took the title subject only to the rights of the Olds Wagonworks and such other creditors as might see proper to attack the conveyance. Miller v. Koertge, 70 Texas, 163.

But the defendant Adair, admitting the purchase of the goods by him from Stephens, and the conveyance of the sheep to Stephens in consideration therefor, pleaded in defense of plaintiff's action for the sheep the invalidity of his title, alleging in effect that it had failed for the reason that the conveyance was one made to defraud creditors and therefore liable to be avoided by them, and had in fact been attacked by a creditor. There is an implied warranty of the title to personal property when it is sold by one who is in possession thereof. The failure of consideration in this case could arise only from the failure of title. There was no failure of title. After the goods had been attached Stephens paid the debt and discharged the lien, which invested Adair with a perfect title. It must also be considered that Adair bought the goods with full notice not only of Stephens' indebtedness, but of the fact that Richardson, the agent of the Olds Wagonworks, was present and pressing Stephens for a settlement. He bought with full notice of whatever invalidity there was in the title, and can not set up the defense of failure of consideration, when in fact the title had never failed. We are of the opinion that the charge of the court in this respect was error.

Appellant's third proposition does not fairly arise from his assignment of error. But we are of the opinion that the testimony as to the solvency of Stephens went to the jury along with other evidence to show intent; and if appellant desired a pertinent instruction he should have requested it. The authority cited by appellant in support of the proposition that not the intent but the effect should have been the criterion (Dixon v. Sanderson, 72 Texas, 359) refers particularly to article 2466, Revised Statutes, with respect to voluntary conveyances; but it is not our purpose here to draw any distinction between these two articles of the Revised Statutes, 2465 and 2466.

For the error pointed out in the charge the judgment of the court below will have to be reversed; and as it will be remanded for another trial we deem it pertinent to remark that the sale of goods by P. H. Stephens to Adair, in consideration of which the sheep were conveyed by Adair to him, was a contract executed on both sides; that the title to the sheep became vested in P. H. Stephens and passed from him to the appellant. It is where the contract remains executory, in the case of illegal consideration, that the courts will refuse to lend their aid to the execution thereof; but once executed the legal title of either party

to property obtained thereby will be protected. It was not necessary that the sheep should be delivered to complete the sale. Cleveland v. Williams, 29 Texas, 204; Blanton & Nunnally v. Langston & Co., 60 Texas, 150; Smith & Co. v. Whitfield, 67 Texas, 125; Boaz & Co. v. Schneider & Davis, 69 Texas, 132; Hopkins v. Partridge, 71 Texas, 608.

The judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*