## YORK v. ROBBINS et al. (No. 1935.)*

(Court of Civil Appeals of Texas. Amarillo. March 29, 1922. Rehearing Denied April 19, 1922.)

1. **Appeal and error ☞931(6)—Court presumed to have disregarded incompetent evidence if there was competent evidence to support the judgment.**

Where the case was tried to the court, and there was evidence aside from the oral testimony objected to sufficient to sustain a judgment, the Court of Appeals must presume that the trial judge did not take the evidence objected to into consideration.

2. **Fraudulent conveyances ☞179(2) — Title vests in grantee on which judgment lien can attach, subject to rights of grantor's creditors.**

A conveyance to defraud the creditors of the grantor vests the title in the grantee as

between the parties, and as to all parties not creditors of, or purchasers from, the grantor, so that the lien of a judgment against the grantee attaches to the property subject only to the rights of grantor's creditors.

### 3. Judgment ⬤⟹779(1)—Lien attaches only to interest of debtor.

The lien of a judgment attaches only to the right the judgment debtor had in the land when the abstract of the judgment was recorded, or which became vested in him thereafter, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5616.

### 4. Estates ⬤⟹10(1) — Merger always takes place in law on uniting of estates, but may not in equity.

In law a merger always takes place when a greater estate and a less meet in the same person in the same right, and without any intermediate estate, but equity is not guided by the rules of law, and will decree there was no merger if such was the intent of the holder of the estates, which intent may be presumed from his interest.

### 5. Mortgages ⬤⟹295(1)—Equity will not prevent merger to enable debtor to escape payment of judgment.

Even though the party in whom the mortgage and the fee united did not intend a merger thereof, equity will not prevent a merger for the purpose of enabling the holder of the title to escape payment of a judgment against him by transferring the note secured by the mortgage and the mortgage to another.

### 6. Mortgages ⬤⟹244(3) — Judgment lien has priority over unrecorded assignment of mortgage.

The lien of a judgment against debtor to whom the fee was conveyed while he held a mortgage has priority over an unrecorded assignment of the mortgage which was not known to the judgment creditors at the time their lien became effective.

Appeal from District Court, Floyd County; R. C. Joiner, Judge.

Trespass to try title by E. R. York against W. A. Robbins and others. Judgment for defendants, and plaintiff appeals. Affirmed.

P. B. Randolph, of Plainview, for appellant.

A. P. McKinnon, of Floydada, for appellees.

HALL, J. Appellant brought this suit against appellees, W. A. Robbins, James K. Green, S. B. McCleskey, Charles R. Steen, and H. C. Bosley, for the title and possession of the land in controversy. His first amended original petition is in form an action in trespass to try title. The appellee Robbins filed an original answer, disclaiming as to all of the land, but by subsequent answer claimed lot No. 18, in block No. 60, in Floyd City; the appellee Steen claimed lot No. 2, in block No. 143, disclaiming as to all other property; Bosley claimed lot No. 10, in block No. 62, and disclaimed as to all other property. He set up valuable improvements in good faith, and prayed that he be allowed the value of his improvements; appellee McCleskey claimed lot No. 10, in block No. 60, disclaiming as to all other property. He pleaded the statute of limitation of five years, and set up valuable improvements amounting to $550. Appellee Green claimed lots 6, 7, and 8 in block 12, Stark's addition to the town of Floyd City, and disclaimed as to all other property. By first supplemental petition the plaintiff, in reply to McCleskey's plea of limitation of five years, set up his service as a soldier in the United States army from May 9, 1916, to March 1, 1919. By joint first supplemental answer, the appellees set out their claim of title under one B. L. York, as follows:

"That plaintiff is seeking to show that a certain deed of conveyance made by T. P. Adams on the 19th day of November, 1910, to B. L. York, conveying the lots of land in controversy, said deed duly acknowledged on the same date, and filed for record on the 2d day of December, 1910, and duly recorded, is not a valid subsisting deed of conveyance as between the grantor T. P. Adams and B. L. York; that the consideration recited in said deed was never paid, and that it was intended between said Adams and said York that said deed should not be put of record; that it was executed to protect Adams against certain indebtedness owing by him. They further alleged that the deed was executed by Adams with intent to hinder, delay, and defraud his creditors, and that B. L. York, in accepting said deed, knew the intent of Adams; that as between Adams and B. L. York said deed passed the title to the lands described therein; that plaintiff Ed R. York is estopped from questioning the validity of said deed of conveyance, and from showing that the consideration was not paid, or that it was for any purpose other than what the deed shows, because B. L. York could not, if he was plaintiff in this suit, urge said matters to destroy the legal tenor and effect of said deed. The defendants further show that said deed has been executed and recorded since December 9, 1910; that no suit has been brought to set said deed aside, and these defendants pleaded the four-year statute of limitation against plaintiff's action to annul said deed or to have the same construed to be other than an absolute conveyance. By supplemental petition the appellant alleged that the deed from Adams to B. L. York, executed on the 19th day of November, 1910, describing the lands in controversy, was intended as a mortgage, and not a deed of conveyance, and was executed by the said Adams in aid of his deed of trust given by him on said land, through which this plaintiff deraigns title, and that said deed above referred to was in fact a mortgage, and not a deed; that it was not delivered to the said B. L. York for record, and was not intended for record; that it was not intended thereby to release or cancel the indebtedness due and owing by Adams to York, at that time secured by a deed

of trust on the lots in controversy, and was not intended and did not cancel said deed of trust."

The plaintiffs introduced the following written evidence of title: A deed of trust executed by T. P. Adams September 12, 1910, conveying the lots in controversy to T. P. Kinsey, trustee, to secure an indebtedness described therein as 11 notes, aggregating about $1,355, which Adams owed Bert L. York; also a trustee's deed, made by A. C. Goen, dated January 5, 1915, recorded same day, as substitute trustee, under the foregoing instrument, conveying the property to Bert L. York, and reciting a cash consideration of $500; also a special warranty deed from Bert L. York to the appellant, Ed R. York, dated January 5, 1915, and recorded January 19, 1915, conveying the property in controversy. The appellees introduced the following documentary evidence: An original execution issued out of the county court of Tarrant county in cause No. 13124, styled J. S. T. Smith v. B. L. York, returned November 30, 1914, "No property found"; also abstract of the judgment in said cause No. 13124, J. S. T. Smith v. B. L. York, rendered in the county court of Tarrant county October 4, 1914, for the sum of $470.83, and filed for record December 8, 1914, in the office of the county clerk of Floyd county, and duly recorded in Judgment Record, vol. 1, p. 144, and properly indexed; also sheriff's deed to W. A. Robbins, dated October 11, 1915, in virtue of a sale made under the Smith-York judgment. This deed was recorded December 29, 1916. It conveys all of the property in controversy except lot 18 in block 60; also quitclaim deed from T. P. Adams to Bert L. York, dated November 19, 1910, filed for record December 2, 1910, in Floyd county, and conveying all of the property in controversy.

It was agreed that the facts alleged by appellant as to his services in the army were true. This eliminated the issue of limitations. The appellant testified by deposition that during October, 1914, his brother, Bert L. York, was indebted to the bank at Gatesville, and had secured his indebtedness by depositing the 11 notes described in the deed of trust from Adams to Bert L. York, above; that Bert L. York owed appellant about $800, and that appellant was security for Bert L. York for the further sum of about $200; that the bank sued Bert L. York, and at the request of Bert L. York the appellant paid off the amount due the bank, whereupon the bank transferred its judgment against Bert L. York, together with the notes against T. P. Adams, and the lien to appellant. He further testified that at the time of this transaction he did not know that any one except the bank had sued his brother; that he had no intention to hinder, delay, or defraud any of Bert L. York's creditors; that he simply took up his brother's debt to the bank as an accommodation to him, and because he thought he might make some money

out of the transaction; that he afterwards took his brother to Floydada on account of his brother's experience in such matters and as the property had been advertised under the deed of trust he told his brother to buy the lots in for him, which was done at the trustee's sale made January 5, 1915; that the trustee conveyed the property to B. L. York, who immediately on the same day conveyed it to appellant. He stated specifically that Bert L. York had no interest in the notes or the land; that he paid all the expenses of the trip to Floydada, and that he allowed Adams $500 upon the indebtedness due from Adams as the value of the property acquired at the trustee's sale. He denied that Bert L. York has had any interest in the property since he acquired it from the bank. He stated he was not sure whether there was a written assignment from the bank to him; that the transfer may have been made by parol. T. P. Adams testified by deposition in substance that the quitclaim deed made by him to Bert L. York in November, 1910, was made at the request of the said York to further secure the notes which Adams owed him; that, while the deed recited a consideration of $1,000 no money was in fact paid; that York promised he would not record the deed unless he saw that another creditor of Adams was going to press him; that the only purpose he had in making said quitclaim deed was to get the property out of the reach of another creditor, and that it was not to be recorded unless such creditor endeavored to enforce collection of his debt; that he did not know the deed had been recorded until after the lots were sold under the deed of trust; that it was not intended that the deed should cancel the notes and deed of trust previously executed; that long after the deed had been recorded he had renewed the notes at the request of Bert L. York; had paid off some of the notes since then; that the whole matter was finally settled with Ed R. York in the winter of 1916.

The court filed no findings of fact.

[1] Several propositions are urged by appellant insisting that the court erred in admitting certain oral testimony, but, under the view we take of the case, it will not be necessary to consider these contentions, because, aside from the oral testimony produced, there is evidence to sustain the court's judgment, and we must therefore presume in support of the judgment that the trial judge did not take the evidence objected to into consideration. Campbell v. Storer, 101 Tex. 82, 104 S. W. 1047. The deed of trust executed by Adams to B. L. York was dated September 12, 1910. Following this on November 19, 1910, Adams executed a quitclaim deed conveying to B. L. York the same property described in the deed of trust. These instruments were duly recorded.

[2] We must presume in support of the judgment that the trial court accepted

Adams' statement to the effect that this quitclaim deed was executed to hinder, delay, and defraud his creditors, and that Bert L. York was a party to the transaction, and agreed not to record it until a certain other creditor of Adams began to press him. As between Adams and Bert L. York, and as to all parties not creditors, etc., of Adams, we think the effect of this quitclaim deed is to vest the title in the latter by operation of law (Stephens v. Adair, 82 Tex. 214, 18 S. W. 102; Fowler v. Stoneum, 11 Tex. 501, 502, 62 Am. Dec. 490), and that the interest conveyed by the deed of trust was merged in the quitclaim deed, notwithstanding Adams says there was an agreement between them to the contrary. When, by the record, the title was thus vested in Bert L. York, an abstract of the judgment from Tarrant county in favor of Smith against Bert L. York was filed and duly recorded in the Judgment Lien Records of Floyd county on December 8, 1914, we think this fixed a lien upon the property in favor of the plaintiff in the judgment against all claimants except the creditors of T. P. Adams and purchasers and others designated in V. S. C. S. art. 3966. Bigelow on Fraudulent Conveyances, 511–513; Wait on Fraudulent Conveyances (2d Ed.) § 387; 20 Cyc. 625, 626; Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S. W. 963, 66 Am. St. Rep. 875. In the last-named case it appears Bicocchi purchased property in Fort Worth, taking the title in the name of one Mazza. This was done for the purpose of defeating the rights of Mrs. Bicocchi, against whom divorce proceedings were instituted. While the property was in the name of Mazza he became indebted to Casey-Swasey Company and other parties who sued and attached the lots. Just prior to the attachment, however, Mazza had reconveyed to Bicocchi. The court held that under the facts Bicocchi could maintain a suit to remove the cloud from his title, but Judge Brown used this language with reference to the rights of the creditors of fraudulent grantees:

"While the legal title to the property remained in Mazza, his creditors might have subjected it to the payment of their debts, and if they had taken proceedings by which they fixed a lien upon the property before the conveyance was made, their rights would be superior to those of Bicocchi."

These authorities sustain the holding that the recordation of the abstract of the judgment in favor of Smith and against Bert L. York, the fraudulent grantee of Adams, gave appellees claiming under the lien of the Smith judgment rights which would be superior to those of Adams. None of the creditors of Adams have ever attacked the quitclaim deed. The contest here is between purchasers under the execution against the fraudulent grantee, Bert L. York, and one claiming to be an assignee of Bert L. York, of a prior mortgagee's interest.

[3] The judgment lien attached to only such right as Bert L. York had on December 8, 1914, or which became vested in him thereafter. Bicocchi v. Casey-Swasey Co., supra; Calvert v. Roche, 59 Tex. 463; McKeen v. Sultenfuss, 61 Tex. 325; V. S. C. S. art. 5616. By the quitclaim deed Bert L. York acquired all interest owned by Adams on November 19, 1910, which, according to this record, is shown to be the fee. This title was never conveyed to Ed R. York. The only right affecting the land shown to have been acquired by him is evidenced by the notes and deed of trust securing them.

[4] These facts present the issue of the merger of deed of trust into the quitclaim deed, and, as stated above, we think this resulted. If a merger was effected by the execution and delivery of the deed, there was no deed of trust lien to be conveyed to Ed R. York, and he acquired no interest in the land by the purported purchase of the notes. If there was no merger, then his deed of trust lien, being prior in point of time, is superior to the title acquired by appellees under the judgment lien.

"In law a merger always takes place when a greater estate and a less coincide and meet in one and the same person in one and the same right, without any intermediate estate. The lesser estate is annihilated or merged in the greater; but 'upon this subject,' says Sir William Grant, 'a court of equity is not guided by the rules of law. It will sometimes hold a charge extinguished where it would subsist at law and sometimes preserve it where at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united.' This intention is a question of fact, and to be tried and determined in the same manner as are other issues. It comes in to repel the prima facie presumption of merger, which arises from the union of the legal and equitable estates in the same person at the same time. His intention is generally determined by his interest, though all the attending circumstances are to be considered. It is a general rule that, when the legal title becomes united with the equitable title, so that the owner has the whole title, the mortgage is merged by the unity of possession, but, if the owner has an interest in keeping these titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger. * * * An intervening incumbrance or equity of any kind is generally sufficient to prevent a merger of the mortgage with the equity of redemption, provided the incumbrance be not one which the owner has assumed to pay or one against which he is estopped from defending, whether such incumbrance be an attachment, a levy or execution, another mortgage or any other lien or equities." 1 Jones on Mortgages (6th Ed.) § 848.

[5] Bert L. York, in whom both titles coincided on November 19, 1910, is not shown to have intended that a merger should be

effected. The notes secured by the deed of trust were not surrendered, and the lien was not released; in our opinion his intention should not control the disposition of this case. The judgment creating the lien was a valid and unsatisfied obligation, and it is said in Jones on Mortgages, § 863:

"Although in equity a mortgage substantially satisfied may be kept alive, when this is requisite to the advancement of justice, this is never allowed when the result will be through the forms of law to aid in perpetrating a fraud or an injury."

Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented and a mortgage or other security be kept alive, if this result would aid in carrying a fraud or other unconscientious wrong into effect under the color of legal forms. Equity only interposes to prevent a merger in order thereby to work substantial justice. 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 794; Smith v. Cooley (Tex. Civ. App.) 164 S. W. 1050. Between the date of the deed of trust and the execution of the quitclaim deed there has been no intervening estate, and to prevent a merger would enable Bert L. York to avoid the payment of a judgment against him, which, according to this record, is valid in all respects. There are cases holding that a fraudulent transfer of the fee by the mortgagor to the mortgagee will not deprive the latter of the benefit of his security by merging it in the greater title, but in such cases it will be found that the fraudulent conveyance had been set aside, and the statute would be permitted to work a penalty against the fraudulent grantee. Bigelow on Fraudulent Conveyances, pp. 491, 492; Pugh v. Sample, 123 La. 791, 49 South. 526, 39 L. R. A. (N. S.) 842, and note. As long as the fraudulent quitclaim deed remains operative, vesting the title in Bert L. York, the lots were, under the holding in the Bicocchi Case, subject to the payment of his debts whenever his creditors, by proper proceedings, fixed their lien upon them.

[6] It is not clear that Ed R. York had acquired the notes and lien prior to the registration of the judgment lien under which appellees claim, and this becomes immaterial in view of the fact that the transfer to him was never registered, and it was not shown that the judgment lien creditors had actual notice of the assignment at the time their lien became effective. We therefore conclude that Ed R. York acquired no greater right than B. L. York had prior to the assignment. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54. If we are correct in holding that a merger was effected on November 19, 1910, when the quitclaim deed was executed, the deed of trust lien was annihilated, and there was nothing but the notes for Ed R. York to acquire by the transfer.

It follows from what has been said that the sale made by the substitute trustee January 5, 1915, in virtue of the power contained in the deed of trust, was a void proceeding, and vested no title either in B. L. York or the appellant.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes