No. 27,967.

THE OSWEGO FINANCE COMPANY, *Appellee*, v. CHARLES S. PERKINS et al., *Appellants* (JOHN· JUDD and MRS. L. E. JUDD, *Appellees*).

(266 Pac. 47.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Fraud in Procurement—Evidence.* A finding of fact, in an action to foreclose a mortgage, that the mortgage was not obtained by fraud, approved.

2. SAME—*Construction—Provisions for Release.* Findings of fact, on which the court based the conclusion that the mortgage should not be satisfied of record under a provision of the mortgage for its release under certain conditions, approved.

3. SAME—*Foreclosure.* Judgment foreclosing the mortgage approved.

4. SAME—*Merger by Conveyance to First Mortgagee—Rights of Junior Mortgagee.* Findings of fact on which the court based the conclusion that first mortgages were merged in the fee conveyed by warranty deeds from the mortgagor to the mortgagees, and judgment establishing the mortgage under foreclosure as a first lien, approved.

5. SAME — *Pleading in Foreclosure — Merger.* The pleadings considered, and *held*, merger was an issue in the foreclosure suit.

6. SAME—*Priority of Mortgages.* Judgment establishing a mortgage as a first lien as against the plaintiff in the foreclosure suit, and foreclosing the mortgage as against the mortgagor, approved. ·

7. NEW TRIAL—*Unavoidable Casualty Preventing Defense—What Constitutes.* A supplemental motion for new trial, the ground of which was unavoidable casualty and misfortune preventing the party from defending, considered, · and held to be without merit.

Appeal from Labette district court; WILLIAM D. ATKINSON, judge. Opinion filed April 7, 1928. Affirmed.

A. D. Neale, of Chetopa, for appellants Charles S. Perkins, Eleanor A. Perkins, B. P. Alger and The Realty Securities Company; *John Schmook* and *John· T. Sturgis*, both of Springfield, Mo., for appellant Henry L. Schneider.

*Elmer W. Columbia* and *Elmer C. Clark*, both of Oswego, for appellee The Oswego Finance Company; *L. E. Goodrich*, of Parsons, for appellees John Judd and Mrs. L. E. Judd.

The opinion of the court was delivered by

BURCH, J.: The action was one to foreclose a real-estate mortgage covering several tracts of land. The petition alleged the mortgage

Mortgages, 41 C. J. pp. 776 n. 89, 827 n. 60; 42 C. J. pp. 116 n. 48, 141 n. 38, 181 n. 63; 39 L. R. A. n. s. 837; 19 R. C. L. 484. New Trial, 29 Cyc. p. 850 n. 36.

was a first lien on certain tracts and a second lien on others. All defendants except John Judd and his wife joined in an answer praying that plaintiff's mortgage be canceled. Judd claimed a first mortgage lien on one tract. Judd was awarded a first lien and plaintiff was awarded a second lien on the tract covered by the Judd mortgage; plaintiff prevailed as against the other defendants, and the defendants other than Judd appeal.

The Oswego State Bank failed, and on April 18, 1924, John E. Wagner was placed in charge. Defendant Charles S. Perkins was indebted to the bank on unsecured notes amounting to $10,739. Negotiations for settlement of the indebtedness followed. Perkins was owner of several tracts of land encumbered by mortgage, and was willing to give the bank a mortgage on all of them except his homestead. Wagner desired a mortgage on all of them, including the homestead. Wagner and Perkins inspected the tracts, and Perkins placed a valuation on them which was sufficient to pay his indebtedness and leave his homestead clear, provided he were given time. Wagner declined to take a mortgage unless it included the homestead, and placed the notes in the hands of an attorney, with direction to sue unless Perkins gave a mortgage such as Wagner desired. Perkins then consented to give a mortgage on all his land, provided he were given two years' time in which to pay and the rate of interest were reduced to six per cent. Wagner assented to those terms. The mortgage was prepared and executed, was dated August 12, 1924, was filed for record the next day, and contained the following provision:

"*Second.* This mortgage is also executed upon the express condition that the above mortgagor may and does have the privilege to sell any tracts of land described herein and apply the amount received therefor first to the payment of the taxes, principal and interest upon any prior lien on said tract, and the balance to be applied on this mortgage, and this mortgage is given upon condition that said second party will release said tract when sold from the provisions of this mortgage."

Subsequently Perkins began to scheme to defeat the mortgage, and finally chose to make use of the quoted provision to accomplish his purpose. He made warranty deeds as follows:

September 9, 1926, to John Judd, a first mortgagee, for a consideration of $1,475.56;

September 10, 1926, to H. L. Schneider, a first mortgagee, for a consideration of $4,900;

September 12, 1926, to B. P. Alger, Perkins' aunt, for a consideration of $10, subject to a mortgage for $6,500, with accrued interest and taxes;

September 20, 1926, to William F. Perkins, Perkins' son, for a consideration of $8.02, subject to a mortgage of $3,200, with accrued interest and taxes;

September 27, 1926, to Clinton A. Perkins, Perkins' son, for $11.77, subject to two mortgages amounting to $3,500, with accrued interest and taxes;

September 28, 1926, to William F. Perkins, Perkins' son, for a consideration of $11.55, subject to mortgage for $1,500, with accrued interest and taxes.

The deeds were filed for record by Perkins on September 30, 1926, and the recording fees were paid by Perkins. In connection with these deeds, Perkins took from the grantees option contracts to repurchase all the tracts except one of 200 acres of pasture land deeded to William F. Perkins. The option contract which Schneider gave Perkins provided for a warranty deed to Perkins on payment of $4,900, with semiannual interest at seven per cent, and taxes, until August 1, 1930, and in the meantime Perkins was to have possession of the land and the profits derived from it. The other option contracts were of like tenor, except as to dates of expiration and terms of repurchase.

The bank's mortgage had been assigned to the Oswego Finance Company, and on the day the deeds were filed for record Perkins wrote the finance company as follows:

"I have sold the several tracts of land upon which your company holds a mortgage assigned from the Oswego State Bank, and herewith hand you check amounting to $31.34, being the balance above the first and second mortgages, with accrued interest and taxes on the several tracts for which they are sold, and herewith request and demand the release according to the second clause of the said bank mortgage providing for said release, together with all papers in connection with same. . . ."

The finance company instituted an investigation, discovered what had occurred, and on November 18, 1926, brought suit to foreclose its mortgage. The issues relating to the Judd mortgage will be left at one side for the present, and the codefendants of Judd and wife will be referred to as the defendants.

The defendants joined in an answer, and later joined in an amended answer. The material portions of the amended answer may be summarized as follows: The attorney to whom Wagner delivered the Perkins notes for suit had full power and authority as agent and attorney of the bank to adjust the Perkins indebtedness with him; and the attorney represented he was agent and attorney of the bank and the bank commissioner. Perkins explained his financial condition to the attorney. For the purpose of deceiving and defrauding Perkins, the attorney represented he would prepare

44—125 Kan.

a mortgage to the bank such that if Perkins desired to dispose of any or all of his land in any manner satisfactory to him so he could extend or adjust prior indebtedness, the bank would release its mortgage on demand. If any land were sold for more than the prior encumbrance, interest and taxes, the excess should be paid to the bank, and the bank would release its mortgage. Perkins consented to give such a mortgage. A few days later the attorney presented to Perkins the mortgage sued on, and represented it would permit Perkins to dispose of his land as he saw fit for the purpose of adjusting prior indebtedness, and the bank would be required to release its mortgage on demand at any time Perkins disposed of any tract or tracts for the purpose stated. Relying on these representations, which were made to deceive and defraud, Perkins and wife executed the mortgage. The representations were the sole consideration on which the mortgage was executed, and it would not have been executed but for the representations. Subsequently, for the purpose of adjusting indebtedness, Perkins sold and transferred by deed the lands described in the six deeds referred to above, copies of which were attached to the answer. Tender of $31.34, the sale price of the several tracts above mortgages, accrued interest, and taxes, and demand for release of plaintiff's mortgage, were pleaded, and the prayer was for cancellation of the mortgage, for statutory damages for failure to release, and for an attorney fee.

The reply to the answer denied under oath that the attorney referred to was agent for the bank or bank commissioner, and denied the charges of fraud.

The answer opened wide the gate to admission of parol evidence concerning how the second paragraph came to be inserted in the mortgage and what the parties intended by it. The facts were, the attorney was not agent of the bank or bank commissioner to negotiate settlement of Perkins' indebtedness. He acted under Wagner's direction, and what he did was subject to Wagner's approval. He made no representations whatever to Perkins to induce him to sign the mortgage, and made no representations whatever regarding privilege of Perkins under the second paragraph of the mortgage. When the parties met to prepare the mortgage, Perkins produced a slip of paper, and asked that its contents be inserted in the mortgage. Wagner read the slip, and said in effect it would be all right for Perkins to sell the land, but it must be sold for a reasonable

price; unless it were sold for a reasonable price Wagner could not expect approval of the bank commissioner. Perkins agreed to this, and the matter contained in the slip became paragraph 2 of the mortgage. Nothing was said about transferring land to the holders of first mortgages and the bank releasing its mortgage, and nothing was said about privilege of Perkins to transfer land to whomever he saw fit and in any manner he saw fit. Of course the court found no fraud was practiced in procuring the mortgage.

Assertion of fraud in the answer was an admission that the second paragraph of the mortgage did not provide for release on the making of deeds to adjust prior indebtedness, because if the paragraph did so provide, representations relating to how the mortgage would be drawn, and what it provided for when drawn, were fulfilled. The demand for release, however, appearing in the letter of September 30, 1926, to the finance company, copied above from the amended answer, was based squarely on the second paragraph of the mortgage. The court dealt with this phase of the floundering answer by finding that the alleged sales evidenced by the deeds did not meet the requirements of the mortgage or the intention of the parties, and were all on insufficient consideration—that is, under the requirements of the mortgage.

The mortgage recited that it was subject to prior mortgages. Privilege to renew any of these mortgages was · granted, and the renewals were to retain priority. Then followed the second paragraph, which dealt with sales—sales for prices producing amounts received to be applied, and balances to be applied in fulfillment of the purpose of the security. If this were not obvious from a reading of the mortgage, doubt as to meaning was dispelled by the evidence showing the intention of the parties. Conceding, however, the mortgage meant that Perkins could demand a release of a tract of land on giving a deed by way of adjustment of prior indebtedness on that tract, he did not spend the month of September, 1926, in that kind of business. He engaged, as the court specifically found in respect to the Schneider and Alger deeds, in an effort "to defeat, by alleged sales, the mortgage lien of the plaintiff."

The deed to Schneider conveyed a tract of 70 acres adjoining the city of Oswego, known as the golf course tract, and a tract of 25 acres in the same section. The fair market value of the golf course tract was $150 per acre, and the fair market value of the other

tract was $65 per acre. The stated consideration of the deed was $4,900, and the deed contained a warranty against encumbrances. As indicated above, the option contract permitted repurchase for $4,900, with interest, on or before August 1, 1930, and in the meantime Perkins was to continue in possession, enjoying the privileges and subject to the burdens of owner.

John Hellwig held a first mortgage on 120 acres of land in a certain quarter section. Hellwig was approached with regard to taking a deed and giving back a contract, but he declined to do so. Perkins' aunt, B. P. Alger, held a mortgage for $1,500 on the remaining 40 acres of the quarter section. When Hellwig refused to "adjust" his indebtedness, the whole quarter section was deeded to Alger. The deed recited it was subject to a $6,500 mortgage on the portion of the land covered by Hellwig's mortgage. The fair market value of the 40 acres on which the improvement stood was $200 per acre, and the fair market value of the remaining 120 acres was $65 per acre. The deed recited a consideration of $10, but Alger paid nothing, assumed nothing, and gave back an option contract which left Perkins beneficial owner.

William F. Perkins was given a deed for a tract of pasture land containing 200 acres. The deed recited a consideration of $8.02, and recited it was subject to a mortgage of $3,200 to the Federal Land Bank. The fair market value of the land was $25 to $30 per acre. This deed was dated September 20, 1926. It seems that in his business of adjusting indebtedness it became necessary for Perkins to use his son, William F., a second time. Therefore, on September 28, 1926, William F. was given a deed for a forty-acre tract. He testified he purchased the tract from his father and his father delivered a deed to him. The expressed consideration was $11.55. He testified as follows:

"Q. Now as to the 40 acres, you took that subject to the mortgage upon it? A. Yes, sir.

"Q. And the principal and accrued interest on that mortgage was $1,701.32, the 1925 tax $29.17; 1926 tax $28, and interest to June 1, 1927, $10.26, a check for $11.55 making a total consideration of $1,815.10. A. Yes, sir."

On November 2, 1926, a little more than a month after his deeds were recorded, William F. Perkins made a sworn financial statement to the American State Bank of Oswego for the purpose of obtaining credit. In the statement he said he owned no real estate. When confronted with the statement while he was on the witness

stand, he was unable to give any explanation of the discrepancy between his testimony given under oath and the financial statement made under oath.

It is idle to contend that these transactions had for their purpose or their effect adjustments of indebtedness to prior lienholders. In August, 1924, when the bank's mortgage was given, the prior mortgages were all in good standing; interest was paid and taxes on the land were paid. After that, Perkins defaulted in payment of interest and taxes. He told Hellwig his reason for doing so was that if he paid interest and taxes the bank or the finance company would have more equity in the land. No grantee in any deed assumed any indebtedness, and all the deeds warranted against the bank's mortgage. When John Judd was approached with respect to taking a deed and giving an option contract, Perkins said he and his attorney had been talking and planning how they would make the finance company release its mortgage, and he told his attorney he had a better plan. That plan was evidently the one he was proposing to Judd. On November 1, 1925, approximately nine months before Perkins undertook to carry the deed and option plan into effect, he made a financial statement to the American State Bank of Oswego for the purpose of obtaining a loan. He testified the statement spoke the truth as it appeared to him at the time it was made, and then sought to give the impression it was fixed up so he could borrow money, and he "got by" with it. It covered all the land embraced in the deeds subsequently given. Three hundred eighty-two acres were valued at $70 per acre, and 160 acres, on which were $20,000 worth of improvements, were valued at $125 per acre. The total encumbrances were stated to be $25,100, and Perkins' equity in the land was $21,640. The statement was in Perkins' own handwriting. Other evidence indicates the ulterior purpose of the so-called adjustment of indebtedness; but the foregoing is sufficient to show the court's conclusion that the mortgagors did not by their "alleged sales meet the mortgage requirements for a sale," that the deeds were for inadequate considerations, and that Perkins was engaged in an effort to defeat plaintiff's mortgage, were sustained by sufficient evidence. The result is, the court did not err as against defendants in refusing to cancel the mortgage and in foreclosing the mortgage.

The court stated the following finding relating to the Schneider transaction:

"The court finds from the evidence, and from the attitude and conduct of defendant Henry L. Schneider, and from the taking of the deed of defendants Charles S. Perkins and wife Eleanor A. Perkins, copy attached to defendants' answer as an exhibit, he had for his purpose a furthering of the efforts of defendants Perkins and Perkins to defeat, by alleged sales, the mortgage lien of the plaintiff herein on said premises, and had for his intention to merge his mortgage for $5,000, recorded in book 89 of mortgages at page 498 of the records in the office of the register of deeds in Labette county, Kansas, into said conveyance, and did merge his mortgage therein."

The conclusion was, plaintiff's mortgage was a first lien on the land conveyed by the Schneider deed. Schneider contends the question of merger was not raised by the pleadings.

Plaintiff's mortgage recited it was subject to a list of mortgages, one of which was Schneider's. The petition alleged, however, plaintiff's mortgage was a valid and subsisting first lien upon the land. The petition also contained the following:

"Fifth. That the interests of the defendants and each and all of them are subject to and inferior to the plaintiff's mortgage, and plaintiff is entitled to have the mortgage decreed a prior lien to each and all of the claims, right, title and interests of said defendants and each and all of them in and to said property described in plaintiff's mortgage and each and every part thereof."

The prayer of the petition was for a first lien, and that the defendants be barred from any right, title, interest, claim or equity in the described land, except right of redemption. The essential allegation of the petition was that Schneider's interest was inferior to plaintiff's mortgage. (*Short v. Nooner*, 16 Kan. 220.) The petition was not challenged for insufficiency, or by motion to make more definite. Schneider joined in the answer of Perkins which, besides pleading fraud, read as follows:

"3. The defendants Charles S. Perkins and Eleanor A. Perkins further aver that thereafter, and for the purpose of adjusting their indebtedness to prior lienholders, they sold and transferred by deeds the lands described in the several deeds of conveyance set out by copy and attached to their original answer herein, for the consideration following, to wit: B. P. Alger for the sum of $8,884.70; Henry L. Schneider for the sum of $5,600.96; John Judd for the sum of $1,475.56; C. A. Perkins, 40 acres, for the sum of $4,220; William F. Perkins for the sum of $4,320 for one tract, and William F. Perkins for other tract, 40 acres, the sum of $1,810."

As indicated, a copy of the deed to Schneider was attached to the answer. Plaintiff replied as follows:

"First. Plaintiff admits the execution of a certain deed of Charles S. Perkins and Eleanor A. Perkins to Henry L. Schneider, and admits that the said Henry L. Schneider accepted said deed, and said transaction was without the

knowledge or consent of plaintiff, and alleges the fact to be that any and all claims and liens of the said Henry L. Schneider upon the said real estate covered by said deed, were merged in said deed, and that plaintiff is entitled to first lien upon the premises described in said deed to Henry L. Schneider."

The answer contained new matter designed to defeat plaintiff's mortgage, not merely as a second lien, but altogether. The reply of merger bore specifically upon the subject of superiority of plaintiff's mortgage over any interest Schneider might have in the land, considered in relation to the deed. It was strictly consonant with the petition, and constituted no new basis of relief, because a first lien under any state of facts was claimed in the petition. Therefore, the reply did not constitute a departure (*Hunter v. Allen,* 74 Kan. 679, 88 Pac. 252). If it were a departure it was not objected to in the district court, the defect was waived (*Clay v. Hildebrand Bros. & Jones,* 34 Kan. 694, 9 Pac. 466), and after judgment on the merits this court will consider all the pleadings, including the reply (*Barrett v. Butler,* 5 Kan. 355, 360).

Schneider has filed an elaborate brief on the subject of merger. This court has been very liberal in allowing a mortgagee who took title to preserve and enforce his mortgage lien whenever it was to his interest to do so, and it is not necessary to review the cases. Merger takes place when two interests in land meet in the same person in the same right, as when a mortgagee acquires the fee. There can be no occasion for an owner to keep up a charge on land of which he is seized in fee simple. Equity, however, will preserve the lien of the mortgage if such be the intention, actual or presumed, of the person in whom the estates unite. His intention is to be determined as a question of fact. When there is no direct proof, intention may be derived from a variety of circumstances, and generally an intention to keep a mortgage alive will be presumed from interest to do so. The presumption is indulged to preserve priority of lien and to protect against other liens, encumbrances and asserted interests. Equity, however, resorts to presumption and extends protection in order to accomplish just and beneficial results; and evidence ordinarily regarded as quite indicative of intention there should be no merger, such as retention of evidence of debt and security, may be of no force when justice demands merger should not be prevented. (*McClain v. Weise,* 22 Ill. App. 272.)

The fact is, the criterion of intention is largely a fiction, because even when intention has been manifested as plainly as possible,

merger will be prevented or enforced, under unanticipated conditions subsequently arising, as equity may require.

In 2 Jones on Mortgages, 7th ed., § 863, it is said:

"A mortgage will not be kept alive in aid of a fraud or wrong. Although in equity a mortgage substantially satisfied may be kept alive when this is requisite to the advancement of justice, this is never allowed when the result will be, through the forms of law, to aid in perpetrating a fraud or an injury. . . . Since equity undertakes to prevent a merger only when this is necessary to effect justice, it will also enforce a merger when to keep the mortgage alive would involve a fraud or wrong upon some innocent party."

In the opinion in the case of *Campbell v. Knights,* 24 Me. 332, the syllabus reads:

"When the equity of redemption is purchased by the mortgagee, the general rule is, that the mortgage may be considered as still subsisting, when it is for his interest that it should be, to protect himself against any other charge or encumbrance upon the estate; but whenever it would be inequitable, or contrary to the clear intention of the parties, or conducive to fraud, the mortgage is regarded as extinguished."

In the opinion in the case of *York v. Robbins,* 240 S. W. 603 (Tex. Civ. App.), the court said:

"Whatever may be the circumstances, or between whatever parties, equity will never allow a merger to be prevented and a mortgage or other security be kept alive, if this result would aid in carrying a fraud or other unconscientious wrong into effect under the color of legal forms. Equity only interposes to prevent a merger in order thereby to work substantial justice." (p. 607.)

Schneider took a deed to land worth $11,825, on which he held a mortgage for $4,900. In a conversation with the president and two stockholders of the finance company who visited him at Springfield, Mo., shortly before the company commenced its foreclosure suit, he said he had a deed to the land, paid nothing for the land above the mortgage, and the land was worth more than he paid for it. The president testified as follows:

"He told me that he held a mortgage on this tract of $5,000; that Mr. Perkins told him he couldn't pay the taxes or the interest, hadn't been able to pay it, and he was willing to give him a deed to satisfy the mortgage; and he thought this property was well worth his mortgage and it would be a good investment to him, and he took a deed to it for the $5,000 consideration."

Schneider knew of plaintiff's mortgage when he took the deed. With plaintiff's mortgage released or canceled, no reason would exist for keeping apart his interests as mortgagee and owner. Interest and taxes until 1930 would reduce but slightly the wide mar-

gin of value above the encumbrance, and in view of all the circumstances, it was likely to be of great advantage to be owner rather than mortgagee. Assuming, therefore, that Schneider was not originally privy to Perkins' scheme to defeat plaintiff's mortgage, there was evidence to support a finding of merger. To a first mortgagee of ordinary prudence, however, it would have seemed strange that a second mortgagee would contract to release a mortgage taken as security for a debt, on the simple deeding away of the land, when the land was known to be worth more than the first mortgage; and in view of what happened, the court was justified in finding the deed to Schneider had for its object a furthering of Perkins' purpose to defeat the second mortgage. Schneider became a party to the scheme by joining in the Perkins answer, which included the vicious and unwarranted charge of fraud. He did not so much as refer to his mortgage in the answer, but adopted Perkins' declaration that the land was sold to him for a stated consideration and had been conveyed to him by an exhibited deed. The result was, the mortgage merged in the fee, unless equity intervened to save its priority over a lien which he was striving to annihilate by upholding a fraud. The most that equity could do in that situation was to maintain austere aloofness. While prevention of merger would not effectuate the fraud, equity could not maintain its standards and volunteer rescue from a predicament created by fraud.

The court made findings relating to Alger's deed identical with those relating to Schneider's deed. On behalf of Alger the following dilemma is proposed: There was a sale, or there was no sale. If there was a sale, Alger was entitled to a release. If there was no sale, lien of plaintiff's mortgage is inferior to hers. It is also contended by Alger that plaintiff admitted sales were made. Plaintiff admitted nothing except execution of the pleaded deeds and acceptance of them by the grantees. If there was a genuine sale which complied with the terms of the second paragraph of plaintiff's mortgage, Alger was entitled to a release. If there was a sham sale to defeat plaintiff's mortgage, equity leaves her where it finds her, and she must abide the consequences. The sale to Alger was a sham.

Defendants contend fraud was not pleaded in the petition or reply. Defendants tendered an issue with respect to the purpose of the deeds. They pleaded the deeds were made pursuant to sales for the purpose of adjusting indebtedness. Plaintiff replied by general

denial. When the trial of the issues was over, the true purpose of the deeds was exposed.

John Judd was importuned to take a deed from Perkins and give an option to repurchase; and a conditional arrangement of that character was partially carried out. Judd told the whole story as he understood it in an answer and cross petition wherein he prayed for cancellation of an option contract which he had signed and which found its way to Perkins' possession, prayed for cancellation of a deed from Perkins which was recorded but not delivered to him, set up his mortgage, and prayed for foreclosure and a first lien. Perkins replied by giving his version of what occurred. The court determined the issues in favor of Judd, and granted the relief which he prayed for. The court has fully considered this branch of the case, but this opinion cannot be extended to the length necessary for formal discussion of it, and the judgment in Judd's favor is approved.

All defendants except Judd joined in a motion for new trial based on a number of grounds. The motion was without merit, and was properly denied. The motion for new trial was denied, and final judgment was rendered on July 5, 1927. On July 23, all defendants except Judd perfected an appeal to this court. On September 6, Schneider filed a supplemental motion for new trial, which was denied on September 9. Schneider then appealed from the order of July 5 denying his original motion for new trial, appealed from the final judgment rendered on the same day, and appealed from the order made on September 9 denying the supplemental motion for new trial.

The supplemental motion for new trial, filed long after the time allowed for filing a motion for new trial had expired, was a document not known to the civil code, and was of no legal efficacy. The ground of the supplemental motion was that Schneider was unavoidably prevented from being present at the trial and from defending on the merits. The proper procedure to obtain vacation of a judgment on that ground is prescribed by R. S. 60-3011 and 60-3012. The court refused to strike the supplemental motion from the files, and then denied it. It was filed during the term at which the judgment was rendered, and the court had discretion to reconsider the judgment, but refusal to vacate or modify as the result of exercise of discretion is not reviewable here. Plaintiff is willing to waive the irregularity in procedure, and because the attorneys who filed the supplemental motion are nonresidents, this court has examined it.

The motion states that after Perkins conferred with Schneider concerning the subject of Schneider taking a deed, and concerning release of the second mortgage under a provision in the mortgage, Schneider learned from Perkins that a suit had been filed in Kansas, and the holder of the second mortgage had refused to make a release. Schneider was not personally served with process, and only learned of the case in a casual manner from Perkins. Schneider did not see the pleadings or know anything of them, and understood the only matter involved was Perkins' right to a release. Schneider did not know his mortgage was involved. He was told an attorney employed by Perkins would attend to the case in court, and it was not necessary for him to employ counsel, as his interests were not involved. He was not advised when the case would be tried, and learned the date of trial after judgment was rendered.

The motion did not disclose "unavoidable casualty or misfortune preventing the party from . . . defending." (R. S. 60-3007.) The motion did not deny that Schneider knew he was a party defendant in the suit filed in Kansas. Being a nonresident, he could not be personally served in the state, and he did not deny he was served with an appropriate kind of process. There is just one standard of diligence for a man who has been made a defendant in a lawsuit and has been notified in a manner provided by law. He must attend to the case, or take the consequences. In determining what he shall do, he takes the risk of the reliability of his sources of information and of the advice he receives, in the absence of misconduct of the opposite party.

Nothing prevented Schneider from defending, and he is not in a position to deny that he did defend. He was represented throughout the proceedings by an attorney who made a defense in his behalf which, had it been successful, would have given him what he now desires, a first lien. Representation by that attorney is not denied or repudiated. On the contrary, Schneider appropriates the benefit of the representation by recognizing the original motion for new trial, filed on his behalf by the attorney, as his own. The second motion is entitled "Supplemental motion for new trial." In appealing to this court he speaks of the original motion for new trial as his motion, and he specifically appeals from the order denying that motion.

At the hearing of a motion for new trial the court takes into consideration the pleadings and all the evidence offered at the trial:

(R. S. 60-3004.)   Testimony given at the trial by several witnesses is so out of harmony with certain statements of fact contained in the supplemental motion that the court was authorized to discredit it; and under all the circumstances, no error was committed in denying the supplemental motion for new trial.

The judgment of the district court is affirmed.